# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PATRICIA A. SHENK, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>- v. –<br><br>MALLINCKRODT PLC and MARK TRUDEAU,<br><br>Defendants. | No. 1:17-cv-00145-EGS |
| JYOTINDRA PATEL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>- v. –<br><br>MALLINCKRODT PLC and MARK TRUDEAU,<br><br>Defendants. | No. 1:17-cv-00171-EGS |
| AMY T. SCHWARTZ & STEPHEN A. SCHWARTZ, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>- v. –<br><br>MALLINCKRODT PLC and MARK TRUDEAU,<br><br>Defendants. | No. 1:17-cv-00447-EGS |

FULTON COUNTY EMPLOYEES'
RETIREMENT SYSTEM, Individually and
On Behalf of All Others Similarly Situated,

Plaintiff,

- v. –

MALLINCKRODT PLC, MARK
TRUDEAU, and MATTHEW K.
HARBAUGH

Defendants.

No. 1:17-cv-00534-EGS

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOVANT
AMALGAMATED BANK'S MOTION FOR CONSOLIDATION
OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF,
<u>AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

I.      PRELIMINARY STATEMENT ...................................................................... 1

II.     FACTUAL BACKGROUND ........................................................................... 3

III.    ARGUMENT .................................................................................................... 5

        A.      The Related Cases Should Be Consolidated ........................................ 5

        B.      Amalgamated Should Be Appointed Lead Plaintiff ............................. 6

                1.      The PSLRA Standard For the Appointment of Lead Plaintiff.................. 6

                2.      Amalgamated Has Satisfied the PSLRA's Procedural Requirements ....... 7

                3.      Amalgamated Has a Significant Financial Interest in the Prosecution
                        of This Litigation ...................................................................... 8

                4.      Amalgamated Satisfies Rule 23's Typicality and Adequacy
                        Requirements .............................................................................. 8

                        a.      Amalgamated's Claims are Typical of the Class ........................... 9

                        b.      Amalgamated Will Fairly and Adequately Represent the
                                Interests of the Class ................................................... 9

        C.      The Court Should Approve Amalgamated's Selection of Lead Counsel ............. 11

IV.     CONCLUSION ............................................................................................... 13

## TABLE OF AUTHORITIES

**CASES**

*Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140, 2008 WL 3925289
(N.D. Cal. Aug. 22, 2008)................................................................................................ 1

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001).......................................................... 3, 11

*In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261 (D.D.C. 2005).................................................. 9

*In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13 (D.D.C. 2006)...................... passim

*Small v. Vanda Pharms. Inc.*, 10 F. Supp. 3d 6 (D.D.C. 2013) ........................................ 3, 6, 8, 9

**STATUTES**

15 U.S.C. § 78u-4 ..................................................................................................... passim

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995).................................................................................... 2, 10

**RULES**

Fed. R. Civ. P. 23 ...................................................................................................... 2, 9

Fed. R. Civ. P. 6(a) ......................................................................................................... 8

Movant Amalgamated Bank, as Trustee for the LongView Collective Investment Funds ("Amalgamated"), by its undersigned attorneys, respectfully submits this memorandum pursuant to Federal Rule of Civil Procedure 42 and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B)(i), for entry of an order: (1) consolidating all related actions; (2) appointing Amalgamated as Lead Plaintiff on behalf of a class of persons (the "Class") who purchased or acquired securities of Mallinckrodt plc ("Mallinckrodt" or the "Company") between July 14, 2014 and January 18, 2017, inclusive (the "Class Period");[1] and (3) approving Amalgamated's choice of Bleichmar Fonti & Auld LLP ("BFA") as Lead Counsel for the Class.

## I.    PRELIMINARY STATEMENT

This is a securities fraud class action against Mallinckrodt and certain of its executives based on alleged false statements concerning Mallinckrodt's business model for its primary drug, a $34,000-per-dose adrenocorticotropic hormone called H.P. Acthar Gel ("Acthar"). The alleged false statements misled investors by (i) minimizing Mallinckrodt's dependence on reimbursements for Acthar prescriptions from Medicare or Medicaid, and (ii) failing to disclose that Mallinckrodt had been engaged in monopolistic practices with respect to Acthar, mainly by buying the rights to the primary potentially-competitive drug and then shutting down its U.S. approval process.

Amalgamated respectfully submits that it should be appointed Lead Plaintiff on behalf of purchasers and acquirers of Mallinckrodt securities during the Class Period. Amalgamated believes that it has the largest financial interest in directing this litigation to recover on behalf of the Class. Amalgamated suffered losses of in excess of $1.75 million, as measured under the widely accepted last-in-first-out ("LIFO") and first-in-first-out ("FIFO") calculation methodologies. Assuming

---

[1] Although certain of the above-captioned cases alleges a different class period, it is well established that the longest alleged class period controls for the purposes of Lead Plaintiff motions under the PSLRA. *See Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140, 2008 WL 3925289 at *2 (N.D. Cal. Aug. 22, 2008).

Amalgamated is the institutional investor with the greatest financial interest in this litigation, and because Amalgamated easily satisfies the adequacy and typicality requirements of Federal Rule of Civil Procedure 23 ("Rule 23"), under the PSLRA a statutory presumption attaches that Amalgamated is the "most adequate plaintiff" to serve as Lead Plaintiff, and therefore should be appointed as such. *See* 15 U.S.C. § 78u 4(a)(3)(B)(iii).

Amalgamated is well-suited to lead this litigation. Amalgamated is an institutional investor with approximately $9.3 billion in assets under management that has served as court-appointed Lead Plaintiff in several securities class actions, recovering hundreds of millions of dollars for investors. In a large, complex case like this one, the Court should appoint as Lead Plaintiff an institutional investor like Amalgamated with the resources, litigation experience, and sophistication to effectively manage the vigorous and efficient prosecution of the case for the benefit of the Class. "In Congress's view, institutional investors should serve as lead plaintiffs where possible, since they are most likely to have the most at stake in the case and be the most sophisticated and competent litigants." *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 17 (D.D.C. 2006); *accord* H.R. Conf. Rep. No. 104-369 at 34 (1995), reprinted in 1995 U.S.C.A.A.N. 730, 733; S. Rep. No. 104-98 at 6 (1995), reprinted in 1995 U.S.C.A.A.N. 679, 685.

Amalgamated is familiar with, and well-suited to fulfill, the requirements of a Lead Plaintiff. Amalgamated has been certified as class representative in numerous securities class actions in which it was appointed Lead Plaintiff, and it played an active role in each litigation and settlement, including by discussing and overseeing litigation strategy with counsel, sitting for depositions, producing discovery materials, participating in settlement negotiations, and approving all important litigation documents. Amalgamated also easily meets the typicality requirements under Rule 23, as required to be appointed as Lead Plaintiff under the PSLRA. Like the other members of the putative

Class, Amalgamated seeks recovery of losses incurred as a result of declines in the price of Mallinckrodt shares purchased or acquired in the United States.

Assuming that Amalgamated is the presumptive "most adequate plaintiff" under the PSLRA, the Court should appoint Amalgamated as Lead Plaintiff unless the presumption is rebutted through "proof" that Amalgamated "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses" making it "incapable of adequately representing the class." *See In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001); *accord Small v. Vanda Pharms. Inc.*, 10 F. Supp. 3d. 6, 11 (D.D.C. 2013). Amalgamated submits that no such proof will be adduced.

Amalgamated's selection of BFA as Lead Counsel should also be approved. BFA is a nationally-recognized securities class action firm that has recovered hundreds of millions of dollars in damages for injured shareholders. Notably, the BFA attorneys who will litigate this case on behalf of Amalgamated are experienced in this District. They include a partner and an associate who have clerked for District Court Judges for the U.S. District Court for the District of Columbia, and liaison counsel who has practiced for decades and tried cases before the Court. In particular, BFA partner Wilson Meeks clerked for the Honorable Judge James Robertson (Ret.), and associate Robyn English recently clerked for Chief Judge Beryl A. Howell. Moreover, Amalgamated's liaison counsel, Susan Podolsky, has practiced before the Court since 1988 and possesses the qualifications necessary to participate as lead counsel in cases in this Court. In sum, BFA and Ms. Podolsky have the expertise, resources, and track record to handle litigation of this scale before the Court.

## II.      FACTUAL BACKGROUND

Mallinckrodt is a pharmaceutical company with a market capitalization of approximately $5 billion. It manufactures branded and generic drugs, as well as bulk pharmaceutical ingredients. Mallinckrodt operates principally out of Saint Louis, Missouri, but is headquartered in Ireland.

The case revolves around Mallinckrodt's drug Acthar, which is the only FDA-approved

adrenocorticotropic hormone ("ACTH"), and is generally regarded as the first-line treatment for infantile spasms, a potentially fatal form of epilepsy that strikes during a child's first twelve months of life.  It is also FDA-approved to treat eighteen other conditions, including nephrotic syndrome and multiple sclerosis.  Sales of Acthar comprise over one-third of Mallinckrodt's overall revenue.  With a price of at least $34,000 per vial, Acthar is one of the most expensive drugs in the U.S. even though its manufacturing cost reportedly is only a few hundred dollars.

Defendants are alleged to have made two types of false statements.  First, Mallinckrodt's CEO (co-Defendant Mark Trudeau) allegedly falsely minimized the proportion of Mallinckrodt's revenue derived from the sales of Acthar that is reimbursed by Medicare or Medicaid when, on an October 6, 2015 investor conference call, he stated that that Medicare and Medicaid together comprised only a little more than "about a quarter" of revenue relating to Acthar.  A year later, on November 16, 2016, Mallinckrodt was confronted with evidence that forced it to admit that its true exposure to Medicare and Medicaid was approximately 50% of revenue.  Mallinckrodt's stock price fell by $12.48, from $67.80 to $55.32 over the next two days, resulting in a market capitalization loss to investors exceeding $1.25 billion.

Second, the Company allegedly failed to disclose that it had been engaged in monopolistic practices with respect to Acthar, mainly by buying the rights to the only potentially competitive drug and then shutting down its U.S. approval process.  Specifically, in August 2014, Mallinckrodt obtained the rights to Acthar when it acquired Questcor Pharmaceuticals, Inc. ("Questcor").  At the time, Questcor had a complete monopoly on the drug, and thus on the U.S. ACTH market.

The previous year Questcor had purchased from Novartis AG the U.S. rights to Synacthen, an ACTH drug sold abroad and seen as a potential U.S. competitor to Acthar.  But Questor immediately shelved Synacthen in the U.S. by failing to seek the regulatory approval necessary to

market or sell it. This triggered an investigation by the Federal Trade Commission ("FTC") into whether the removal of Synacthen as a competitor to Acthar "violated the antitrust laws." Despite the FTC investigation, Mallinckrodt continued to (i) shelve Synacthen, (ii) downplay to investors the Company's exposure to the investigation, and (iii) tout the durability of Acthar's effective monopoly on the U.S. ACTH market.

On January 18, 2017, Mallinckrodt surprised investors by announcing a settlement with the FTC that included a $100 million fine and an agreement to license Synacthen to a third party to possibly compete with Acthar on treatments responsible for one third of Acthar sales. On the news, the Company's stock price declined from $49.42 to $46.53, or $2.89, wiping out approximately $300 million in market capitalization.

## III.   ARGUMENT

### A.   The Related Cases Should Be Consolidated

Under the PSLRA, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," courts shall not appoint a Lead Plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). The Court has already consolidated two of the four pending cases—*Shenk* (1:17-cv-00145-EGS) and *Patel* (1:17-cv-00171-EGS). *See* Minute Order dated Feb. 27, 2017, *Patel* (consolidating *Shenk* and *Patel* and ordering that "[a]ll filings in these consolidated cases shall be made, with dual captions, only in [*Shenk*]"). Two additional cases before this Court, *Schwartz* (1:17-cv-00447-EGS), filed on March 13, 2017, and *Fulton County Retirement Systems* (1:17-cv-00534-EGS), filed on March 23, 2017, have yet to be consolidated with the other actions.

The *Schwartz* and *Fulton County* actions should be consolidated as well. Under Federal Rule of Civil Procedure 42(a) the Court may consolidate actions that involve "common question[s] of law or fact." Courts have consistently consolidated securities class actions involving the same parties,

securities, and general allegations, concluding that consolidation will expedite the proceedings, reduce duplication, avoid inconsistent outcomes, and minimize the cost and expense for both the class and defendants.   Here, each of the above-captioned actions bring virtually identical claims against Mallinckrodt and its officers on behalf of purchasers or acquirers of its securities who relied on Defendants' materially false and misleading statements or omissions.   The actions should therefore be consolidated.   *See, e.g., Small v. Vanda Pharms. Inc.*, 10 F. Supp. 3d 6, 11 (D.D.C. 2013) (consolidating actions "arising out of the same alleged misrepresentations … on behalf of the same putative class," as such actions are "well suited for consolidation").

### B.     **Amalgamated Should Be Appointed Lead Plaintiff**

Amalgamated meets all the prerequisites for appointment as Lead Plaintiff in this securities class action and should therefore be appointed as Lead Plaintiff.

### 1.     **The PSLRA Standard For the Appointment of Lead Plaintiff**

The PSLRA provides a clear procedure for selecting Lead Plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."   15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth the procedure for selecting Lead Plaintiff); *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 17-18 (D.D.C. 2006) (same).

The statute first specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class – (I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class. 15 U.S.C. § 78u-4(a)(3)(A)(i).

The statute further directs that, after class members have moved for appointment as Lead

Plaintiff, the court "[n]ot later than 90 days after … notice is published … shall consider any motion made by a purported class member … and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (… the 'most adequate plaintiff')."  15 U.S.C. § 78u-4(a)(3)(B)(i).

Under the PSLRA, "the court shall adopt a presumption that the most adequate plaintiff" is the "person or group of persons" who (i) filed a motion for Lead Plaintiff, (ii) "has the largest financial interest in the relief sought by the class", and (iii) otherwise satisfies the class representative's requirements pursuant to Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  This statutorily presumptive "most adequate plaintiff" should then be appointed Lead Plaintiff by the court, unless the  presumption is rebutted "upon proof" that the movant with the largest financial interest either (a) "will not fairly and adequately protect the interests of the class," or (b) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  *XM Satellite Radio*, 237 F.R.D. at 17 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)).

The statutory presumption of "most adequate plaintiff" attaches to Amalgamated because it filed a timely motion for appointment as Lead Plaintiff, has (it believes) the largest financial interest in the relief the Class seeks, and easily satisfies the PSLRA's typicality and adequacy requirements.  Amalgamated should therefore be appointed Lead Plaintiff.

## 2. Amalgamated Has Satisfied the PSLRA's Procedural Requirements

Amalgamated filed this motion to serve as Lead Plaintiff in a timely manner.  On January 24, 2017, the plaintiff who filed the first securities class action complaint against Mallinckrodt caused notice regarding the pending nature of this case to be published on PR Newswire, a widely-

circulated, national wire service.  *See* Meeks Decl. Ex. A.[2]  This was the earliest notice of action filed relating to the allegations in the above-captioned cases.  As permitted by the PSLRA, Amalgamated has filed its motion for appointment as Lead Plaintiff within the required sixty days after publication of that notice.[3]

### 3.   Amalgamated Has a Significant Financial Interest in the Prosecution of This Litigation

Amalgamated believes that it has the largest financial interest in the prosecution of this action.  Two widely accepted measures of financial stake at the Lead Plaintiff stage are trading losses calculated using LIFO and FIFO.  As calculated under both the LIFO and FIFO methods, Amalgamated suffered losses in excess of $1.75 million trading Mallinckrodt common stock during the Class Period.  Meeks Decl. Ex. B (Loss Chart).  Amalgamated is not aware of any other movant with a larger financial interest in this action.

### 4.   Amalgamated Satisfies Rule 23's Typicality and Adequacy Requirements

Amalgamated also "satisfies the requirements of Rule 23" as required by the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  At the Lead Plaintiff stage, the Court's analysis of these requirements need not be as complete as would a similar determination for the purpose of class certification: "the party moving for lead plaintiff of the consolidated action need only make a *preliminary* showing that it satisfies the typicality and adequacy requirements of Rule 23."  *Vanda Pharms.*, 10 F. Supp. 3d. at 13 (quoting *XM Satellite Radio*, 237 F.R.D. at 18).  It is readily apparent

---

[2] References to "Meeks Decl." herein are to the Declaration of Wilson M. Meeks III in Support of Amalgamated's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Its Selection of Lead Counsel, filed concurrently with this Memorandum of Points and Authorities.

[3] The 60th calendar day fell on Saturday March 25, 2017.  Under Fed. R. Civ. P. 6(a), the statutory "period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday," *i.e.* Monday March 27, 2017.

that Amalgamated is typical and adequate.[4]

### a. Amalgamated's Claims are Typical of the Class

"To meet the typicality requirement, a presumptive lead plaintiff 'must demonstrate that its claims arose out of the same course of conduct and are based on the same legal theory' as those of the absent putative class members." *Id.* (quoting *In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 263 (D.D.C. 2005)). Here, Amalgamated's claims satisfy Rule 23(a)(3)'s typicality requirement because like all other Class members, Amalgamated (1) purchased Mallinckrodt securities during the Class Period, (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (3) was damaged thereby. Amalgamated is not subject to any unique defenses.

### b. Amalgamated Will Fairly and Adequately Represent the Interests of the Class

The adequacy inquiry focuses on whether the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This adequacy requirement is met if: (1) the putative Lead Plaintiff "has the ability and incentive to represent the claims of the class vigorously"; (2) has retained "adequate counsel"; and (3) no conflicts exist between the claims of the putative Lead Plaintiff and those of the class. *Vanda Pharms.*, 10 F. Supp. 3d. at 13 (quoting *XM Satellite Radio*, 237 F.R.D. at 18).

No antagonism or conflict exists between the interests of Amalgamated and those of the absent Class members; rather, the interests of Amalgamated and the Class are squarely aligned. Amalgamated has submitted a detailed declaration explaining its commitment to "ensure that this

---

[4] The PSLRA also requires that "[e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification" attesting to the fact that the putative Lead Plaintiff satisfies six conditions enumerated in the statute. 15 U.S.C. § 78u-4(a)(2). Amalgamated's PSLRA Certification is filed concurrently herewith as Exhibit C to the Meeks Decl.

action against Mallinckrodt and all culpable parties will be vigorously litigated ... in the best interest of the class," Meeks Decl., Ex. D ¶ 13, and in a manner "focused on recovering the substantial losses that it and the putative Class incurred as a result of Defendants' violations of the federal securities laws," *id*. ¶ 7.[5]  *See also* Meeks Decl., Ex. C.

Indeed, Amalgamated is exactly the type of institutional investor that Congress, encouraged to act as Lead Plaintiff in private securities class actions through the enactment of the PSLRA.  The PSLRA was framed to "'encourage institutional investors to take a more active role', which would 'ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.'"  H.R. Conf. Rep. No. 104-369, at *34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 (1995); *accord XM Satellite Radio*, 237 F.R.D. at 17 ("In Congress' view, institutional investors should serve as lead plaintiffs where possible, since they are most likely to have the most at stake in the case and be the most sophisticated and competent litigants.").

Amalgamated Bank is a New York chartered, FDIC-insured, commercial bank that was established in 1923 by the Amalgamated Clothing Workers of America and remains the only union owned bank in the United States.  Meeks Decl., Ex. D ¶ 3.  Amalgamated Bank, through its Trust Committee, serves as trustee for the LongView Collective Investments Funds (the "LongView Funds").  *Id*.  The LongView funds have approximately $9.3 billion in assets under management.  *Id*.  Through the LongView Funds, Amalgamated has pursued an aggressive program of vigorous shareholder activism.  *Id*.

Amalgamated has substantial experience as court-appointed Lead or co-Lead Plaintiff in overseeing the prosecution of complex securities class actions.  *Id*. ¶ 5-6.  Recently, Amalgamated

---

[5] References to "Hogan Decl." herein are to the Declaration of William Hogan, Amalgamated's Senior Vice President, Investment Management, in support of Amalgamated's Motion For Consolidation, Appointment as Lead Plaintiff, and Approval of Its Selection of Lead Counsel, filed as Exhibit D to the Meeks Decl.

recovered $145 million for a class of investors in *Nieman v. Duke Energy Corp.*, No. 3:12-cv-00456 (W.D.N.C. Nov. 2, 2015). *Id.* ¶ 5.  Notably, Amalgamated recovered $600 million for the class in *In re Cardinal Health, Inc. Sec. Litig.*, 528 F. Supp 2d 752 (S.D. Ohio 2007), which currently ranks among the top 25 securities settlements since the passage of the PSLRA.  *Id.*  Amalgamated is willing and able to prosecute this case to its fullest extent.

Finally, Amalgamated has retained counsel that is highly experienced in prosecuting securities class actions and has timely submitted its choice of counsel to the Court for approval, in accordance with the PSLRA.  *See infra* p. 11-12, and 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v).

### C.  The Court Should Approve Amalgamated's Selection of Lead Counsel

Under the PSLRA, the Lead Plaintiff is given the right, subject to court approval, to "select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v).  This provision "evidences a strong presumption in favor of approving a properly-[selected] lead plaintiff's decision as to counsel selection and counsel retention."  *XM Satellite Radio*, 237 F.R.D. at 21 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001)).

Amalgamated's choice of counsel, BFA, is among the foremost securities class action law firms in the country.  BFA's partners have served as Lead and co-Lead counsel on behalf of dozens of institutional investors, and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades.  *See* Meeks Decl. Ex. E (BFA Resume).  The firm's recent matters include the recovery for the class of a $219 million in *In re Genworth Fin. Inc. Sec. Litig.*, 14-cv-00682 (E.D. Va. Sept. 26, 2016), the largest securities class action recovery ever achieved in the Eastern District of Virginia; $234 million in settlements in *In re MF Global Holdings Sec. Litig.*, 11-cv-07866 (S.D.N.Y. July 15, 2016); and a $120 million recovery in *Freedman v. Weatherford Int'l, Ltd.*, 12-cv-02121 (S.D.N.Y. Nov. 4, 2015).  *Id.* at pp. 1-4.

Notably, BFA's litigation team includes a partner and an associate who have clerked for District Court Judges for the U.S. District Court in the District of Columbia, and liaison counsel who has practiced for decades before this Court.  In particular, BFA partner Wilson Meeks clerked for the Honorable Judge James Robertson (Ret.), and associate Robyn English recently clerked for Chief Judge Beryl A. Howell.  *Id*. at pp. 11, 15.  Amalgamated's liaison counsel, Susan Podolsky, has practiced before the Court since 1988 and possesses the qualifications required by this Court to serve as lead counsel in a trial or contested evidentiary matter.  *See* Meeks Decl. Ex. F (Podolsky Resume). In sum, BFA and Ms. Podolsky have the expertise, resources, and track record to handle litigation of this scale before the Court.  Moreover, BFA attorneys and Ms. Podolsky have a distinguished history and proven track record together, securing the largest and third largest securities class action settlements in the Eastern District of Virginia, in *In re Genworth* and in *In re Computer Sciences Corp. Sec. Litig*., No. 1:11-cv-610 (E.D. Va.), respectively.

[*continued on next page*]

## IV.    CONCLUSION

For the foregoing reasons, Amalgamated respectfully requests that the Court: (1) consolidate the related cases; (2) appoint Amalgamated as Lead Plaintiff; (3) approve Amalgamated's selection of BFA as Lead Counsel; and (4) grant such other relief as the Court may deem just and proper.

Dated: March 27, 2017

Respectfully submitted,

**BLEICHMAR FONTI & AULD LLP**

Wilson Meeks (D00334)
Javier Bleichmar (*pro hac vice* to be filed)
Joseph Fonti (*pro hac vice* to be filed)
Robyn R. English (D00406)
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile:  (212) 205-3960
wmeeks@bfalaw.com
jbleichmar@bfalaw.com
jfonti@bfalaw.com
renglish@bfalaw.com

**LAW OFFICES OF
SUSAN R. PODOLSKY**
Susan R. Podolsky (D.C. Bar No. 415990)
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
Telephone: (571)366-1702
Facsimile:  (703) 647-6009
spodolsky@podolskylaw.com

*Liaison Counsel for Amalgamated Bank
and [Proposed] Liaison Counsel for the Class*

Lesley E. Weaver (*pro hac vice* to be filed)
1999 Harrison Street, Suite 670
Oakland, California 94612
Telephone:  (415) 445-4003
Facsimile:  (415) 445-4020
lweaver@bfalaw.com

*Counsel for Amalgamated Bank
and [Proposed] Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the registered participants.  Executed on March 27, 2017.

*/s/ Robyn R. English*
Robyn R. English (D00406)