# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

PATRICIA A. SHENK, *et al.*,

     *Plaintiffs*,

  v.

MALLINCKRODT PLC, *et al.*,

      *Defendants*.

Civil Action No. 17-cv-00145 (DLF)

## <u>MEMORANDUM OPINION AND ORDER</u>

  Before the Court are the State Teachers Retirement System of Ohio's ("STRS Ohio's") Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Its Selection of Counsel, Dkt. 16, and the Motion of Amalgamated Bank for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Its Selection of Lead Counsel, Dkt. 18. Having considered the parties' briefs and counsels' arguments during the motions hearing held on March 1, 2018, the Court will grant STRS Ohio's motion, appoint STRS Ohio as lead plaintiff, approve Barrack, Rodos & Bacine as lead counsel, and deny Amalgamated Bank's motion.[1]

  Pursuant to the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4 (2016), a court must "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C.

---

[1] All parties agree that the motions for consolidation are now moot because all related cases were consolidated by the prior Judge from whom this case was reassigned.

§ 78u-4(a)(3)(B)(i).  A court's appointment of lead plaintiff is circumscribed by the PSLRA's mandate that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
>
> (aa)    has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As noted, both STRS Ohio and Amalgamated Bank filed motions under the PSLRA seeking appointment as lead plaintiff.[2]  Accordingly, the process of determining the lead plaintiff begins by identifying the movant with the largest financial interest in the relief sought by the class.  *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).

In this case, there is little question that STRS Ohio has the largest financial interest.  Calculated on a first-in-first-out ("FIFO") accounting basis, STRS Ohio's alleged financial loss is $46,378,080, and on a last-in-first-out ("LIFO") accounting basis, its alleged financial loss is $45,659,928.  STRS Ohio's Br. in Supp. of Mot. 11, Dkt. 16.  Not only is STRS Ohio's financial interest substantial, it exceeds that of Amalgamated Bank by a multiplier of more than twenty.[3]

---

[2]  Amy Schwartz and Stephen Schwartz also moved to be appointed lead plaintiffs but later conceded that "they do not possess the largest claimed loss among the various lead plaintiff movants."  Resp. of Amy & Stephen Schwartz to Mots. for Appointment as Lead Pl. & for Approval of Selection of Lead Counsel 1, Dkt. 26.  Therefore, their motion will be denied.

[3]  Amalgamated Bank's alleged financial loss is approximately $1.8 million.  Mem. in Supp. of Amalgamated Bank's Mot. 8, Dkt. 18-1.

To satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, a movant seeking to be appointed lead plaintiff need only make a preliminary showing that it meets the typicality and adequacy requirements. *See In re Cendant Corp. Litig.*, 264 F.3d at 263 (stating that "[t]he initial inquiry (i.e., the determination of whether the movant with the largest interest in the case 'otherwise satisfies' Rule 23) should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy" (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc))). STRS Ohio has met this standard.

First, STRS Ohio's claims appear to be typical of the putative class as a whole. To satisfy the typicality requirement, a movant's claims need not be identical with the absent class members, but they must be reasonably coextensive with the class as a whole. *See Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (noting that the typicality "requirement is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability"); *Wagner v. Taylor*, 836 F.2d 578, 591 (D.C. Cir. 1987) ("Courts have held that typicality is not destroyed by factual variations."); *Dellums v. Powell*, 566 F.2d 216, 230 (D.C. Cir. 1977) (stating that the claims of the class representative must be typical of the class as a whole). STRS Ohio, like Amalgamated Bank and the other putative plaintiffs, alleges that it suffered a loss from its purchase of allegedly artificially-inflated Mallinckrodt securities that it acquired during the class period. *See* STRS Ohio's Br. in Supp. of Mot. 13, Dkt. 16; Class Action Compl. ¶¶ 1–22, 31–54 & 61, Dkt. 1; Class Action Compl. for Violations of the Fed. Sec. Laws ¶¶ 1–16, 26–52 & 54, Dkt. 1, *Patel v. Mallinckrodt PLC*, No. 17-cv-00171 (D.D.C. Jan. 26, 2017); Compl. for Violations of the Fed. Sec. Laws ¶¶ 1–18, 36–55 & 71–74, Dkt. 1, *Fulton Cnty. Emps.' Ret. Sys. v. Mallinckrodt PLC*,

No. 17-cv-00534 (D.D.C. Mar. 23, 2017); Class Action Compl. for Violations of Fed. Sec. Laws ¶¶ 1, 17–53, Dkt. 1, *Schwartz v. Mallinckrodt PLC*, No. 17-cv-00447 (D.D.C. Mar. 13, 2017).

Second, STRS Ohio also appears to meet the adequacy requirement of Rule 23. In assessing this requirement, courts generally consider whether a movant has the ability and incentive to represent the claims of the class vigorously, whether the movant has obtained adequate counsel, and whether there is a conflict of interest between the movant's claims and those asserted on behalf of the class. *In re Cendant Corp. Litig.*, 264 F.3d at 265. Based on its financial interest in excess of $45 million, STRS Ohio has ample incentive to represent the putative class vigorously. Moreover, both STRS Ohio and its proposed lead counsel, Barrack, Rodos & Bacine, have extensive experience in securities litigation. STRS Ohio has served as a lead or co-lead plaintiff in numerous class-action securities lawsuits, including a prior case litigated in this district, while Barrack, Rodos & Bacine has served as lead counsel and has secured multimillion- to billion-dollar recoveries in numerous such suits. *See* STRS Ohio's Opp'n. Br. 1–2, Dkt. 27; STRS Ohio's Reply Br. 10–12, Dkt. 28 (citing lawsuits); STRS Ohio's Br., Rosen Decl. Ex. D at 5–7, Dkt. 16-5. As a preliminary matter, it also appears that STRS Ohio's interests are aligned with the putative class, and STRS Ohio can adequately represent the class's interests.

The conclusion that STRS Ohio is presumptively the most adequate plaintiff does not end the inquiry because the presumption can be rebutted if a putative plaintiff can prove that STRS Ohio "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). In addition, a putative plaintiff can obtain discovery to rebut the presumption but "only if the plaintiff first demonstrates a reasonable basis for a finding that the

presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv). Amalgamated Bank has neither rebutted the presumption nor demonstrated a reasonable basis to make the finding necessary to warrant discovery.

Here, Amalgamated Bank contends that STRS Ohio is incapable of adequately representing the class principally because it is subject to a unique defense, namely, a pay-to-play challenge. In particular, Amalgamated Bank alleges that Ohio Attorney General Michael DeWine's office, and not STRS Ohio, selected Barrack, Rodos & Bacine to serve as STRS Ohio's lead counsel, and Murray Murphy Moul & Basil LLP to serve as special counsel,[4] because of campaign contributions that these firms, their members, a lobbyist, and family members made to various campaigns involving Attorney General DeWine and his son. Amalgamated Bank's Reply Br. 2–3, 5–13, 17–18, Dkt. 29. For this reason, Amalgamated Bank argues that STRS Ohio is subject to unique defenses that render it incapable of adequately representing the class. *Id.* at 21–23. Amalgamated Bank predicts that, in the future stages of this litigation, the defendants will raise the pay-to-play issue and challenge STRS Ohio's appointment as lead plaintiff. *Id.* at 2–3. Such challenges, Amalgamated Bank contends, will subject the class to unnecessary expense and thereby affect its ultimate recovery. *Id.* Amalgamated Bank further argues that the close associations between selected counsel and the Ohio Attorney General's Office call into question whether STRS Ohio and its counsel are capable of adequately representing the interests of the class. *Id.* at 13–21.

---

[4] At the March 1, 2018 hearing, Amalgamated Bank did not dispute the fact that, under the PSLRA, the Court need not approve STRS Ohio's choice of Murray Murphy Moul & Basil LLP as special counsel. Mot. Hr'g Tr. 20–21, Mar. 1, 2018, Dkt. 44.

To support its claims, Amalgamated Bank has offered various evidence, including (1) Ohio Secretary of State records reflecting contributions that the law firms, Barrack, Rodos & Bacine and Murray Murphy Moul & Basil LLP, their attorneys, and their attorneys' family members made to various political campaigns and committees, including Mike DeWine for Ohio, DeWine for Judge, DeWine for Justice, the Ohio Republican State Central and Executive Committee State Account, and the Ohio Republican State Central & Executive Committee State Candidate Fund;[5] (2) Ohio Secretary of State records reflecting contributions that Stephanie McCloud, a lobbyist hired by Barrack, Rodos & Bacine in 2011 when Attorney General DeWine assumed office, made to Mike DeWine for Ohio, DeWine for Judge, DeWine for Justice, and the Ohio Republican State Central & Executive Committee State Candidate Fund;[6] (3) newspaper articles from 2014 suggesting a link between law firm contributions and Attorney General DeWine's appointments of legal counsel for various state contracts; and (4) fundraising event invitations that reveal that JB Hadden participated directly in the organization of fundraisers for

---

[5]  In particular, Amalgamated Bank notes the following contributions: in 2013, Barrack, Rodos & Bacine's Political Action Committee donated $4,000 to Attorney General DeWine's campaign; since 2011, Murray Murphy Moul & Basil LLP attorneys have contributed $24,432 to Mike DeWine's campaigns and $9,750 to the judicial campaigns to Mike DeWine's son; in 2017, JB Hadden, a partner of Murray Murphy Moul & Basil LLP and former Treasurer of Attorney General DeWine's campaigns, and one of his family members, gave $2,000 to Mike DeWine's campaign.  Amalgamated Bank's Reply Br. 6–7, Dkt. 29.

In addition to the above direct contributions, Amalgamated Bank highlights indirect contributions that Barrack, Rodos & Bacine and Murray Murphy Moul & Basil LLP made to the Ohio GOP, which supported Attorney General DeWine's campaign.  In 2012, Barrack, Rodos & Bacine gave $30,000 to the Ohio GOP.  Since 2011, JB Hadden has given $34,500 to the Ohio GOP.  *Id.* at 8, Dkt. 29.

[6]  Since 2011, McCloud and her husband have contributed $119,150 to the Ohio GOP, $4,750 to Judge DeWine, and $3,850 to Attorney General DeWine.  Amalgamated Bank's Reply Br. 10, Dkt. 29.

the Mike DeWine for Ohio campaign.  Amalgamated Bank's Reply Br., 2d Meeks Decl. Exs. A–Q, Dkt. 29-2 to 29-18.

The Court is unaware of any case concluding that either a putative lead plaintiff or a putative class representative failed to satisfy Rule 23's adequacy requirement based on a pay-to-play challenge.  Nor is the Court aware of any case in which a pay-to-play challenger has been granted discovery on the basis of such a claim.  This is not surprising.  "Courts have long been less enamored of securities litigation pay-to-play arguments than litigants and the press . . . ."  *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 604 n.46 (C.D. Cal. 2009).  To the Court's knowledge, this is the first time in this jurisdiction that a putative plaintiff has advanced a pay-to-play challenge in an attempt to disqualify a presumptive lead plaintiff under the PSLRA.

Amalgamated Bank cites a Third Circuit case, *In re Cendant Corporation Litigation*, 263 F.3d 201 (3d Cir. 2001), to support its pay-to-pay challenge.  While the Third Circuit in *Cendant* expressed concerns about pay-to-play allegations, it affirmed the district court's decision rejecting such a challenge where the challenger put forth no evidence that lawful campaign contributions had influenced the lead plaintiff's selection process in that case.  263 F.3d at 269–70; *see also In re Cendant Corp. Litig.*, 182 F.R.D. 144, 148 (D.N.J. 1998).  As the Third Circuit made clear, "Allegations of impropriety are not proof of wrongdoing.  If they were, then any class member (or lawyer seeking to be appointed lead counsel) could disable any presumptive lead plaintiff by making unsupported allegations of impropriety."  263 F.3d at 270.

Amalgamated Bank also relies on several district court cases, including one in which a court made special inquiries where it was concerned about an alleged pay-to-play scheme involving an Attorney General Office's appointment of counsel for a state retirement system.

*See, e.g.*, *In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 256 (N.D. Cal. 2013) (requiring state retirement fund to explain its process for selecting counsel and requiring counsel to disclose campaign contributions made to state fundraisers or political campaigns).  For further support, Amalgamated Bank cites cases from other districts in which courts have found class representatives inadequate based on "potential conflicts of interest" stemming from close associations between class representatives and counsel.  *See, e.g.*, Mem. & Order, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 12-cv-5723-NRB, slip op. at 263, Dkt. 321 (S.D.N.Y. Feb. 28, 2018) (finding an "appearance of impropriety" where interim class counsel failed to disclose an agreement to pay the son of the putative class representative's chief executive officer 15% of attorney fees and the promised payment greatly exceeded any recovery that the class representative was likely to receive); *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 156–57 (S.D.N.Y. 2010) (finding an "appearance of impropriety" where interim class counsel failed to disclose additional counsel and undisclosed counsel was a long-time neighbor and client of class representative).

In this case, as in *Cendant*, there is no evidence that the political contributions made by Barrack, Rodos & Bacine, its attorneys and lobbyist, or by Murray Murphy Moul & Basil LLP, its attorneys and family members, were illegal.  In the absence of campaign contributions made in violation of law, it is clear that "attorneys are free to exercise their right to donate to politicians who support their views."  *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. at 604 n.46; *accord Middlesex Cnty. Ret. Sys. v. Semtech Corp.*, No. CV 07-7114 CASE (FMOx), 2010 WL 11507255, at *6 (C.D. Cal. 2010).  Notably missing from Amalgamated Bank's proffered evidence is any nexus between the noted political contributions and STRS Ohio's selection of Barrack, Rodos & Bacine as lead counsel and Murray Murphy Moul & Basil LLP as special

counsel.   While Amalgamated Bank has submitted dated newspaper articles that contain allegations regarding quid pro quo arrangements involving Attorney General DeWine and state contractors, and more direct accusations by political rivals and commentators, none of the articles mention Barrack, Rodos & Bacine or Murray Murphy Moul & Basil LLP.[7] Amalgamated Bank's Reply Br., 2d Meeks Decl. Exs. A, B, D, H, N, O & P, Dkt. 29-2, 29-3, 29-5, 29-9, 29-15, 29-16 & 29-17.

Amalgamated Bank does not dispute that neither STRS Ohio nor Barrack, Rodos & Bacine or Murray Murphy Moul & Basil LLP has previously been the subject of a pay-to-pay challenge.[8]  Both firms have been members of Ohio's securities litigation panel for a decade or more and have served as counsel to Ohio's pension funds under the administrations of both Republican and Democratic Attorneys General.  *See* STRS Ohio's Reply Br. 9 & n.4, Dkt. 28, Rosen Reply Decl. ¶ 4, Dkt. 28-1, Rosen Reply Decl. Ex. 2 ¶¶ 2, 3, Dkt. 28-3.

During the hearing held on March 1, 2018, counsel for Barrack, Rodos & Bacine provided the Court with further assurances regarding the two-step procedure that was used to select counsel in this case.  Mot. Hr'g Tr. 7–9.  As counsel explained, Barrack, Rodos & Bacine and Murray Murphy Moul & Basil LLP competed in a request-for-qualifications ("RFQ") process to be selected to serve on the securities litigation panel of the Ohio Attorney General's

---

[7]  Although one news article mentions an email exchange between Attorney General DeWine and Hadden, that email exchange occurred in 2012, two years before Hadden joined Murray Murphy Moul & Basil LLP, and seven years after the firm was first appointed to advise Ohio's pension funds.  *See* Amalgamated Bank's Reply Br., Meeks Decl. Ex. N, Dkt. 29-15; STRS Ohio's Reply Br., Rosen Reply Decl. Ex. 2 ¶ 3, Dkt. 28-3.

[8]  Indeed, last year a district court certified a class with STRS Ohio serving as a co-lead plaintiff and Murray Murphy Moul & Basil LLP serving as STRS Ohio's special counsel.  *See* Order, *Basile v. Valeant Pharm. Int'l, Inc.*, No. SACV 14-cv-02004-DOC (KES) (C.D. Cal. Mar. 15, 2017).

Office. According to counsel, the officials who were involved in selecting firms for the securities litigation panel had no involvement in any political activities of the Attorney General's Office, nor did they have any knowledge of political contributions to the Attorney General or other state officials. *Id.* at 5. Moreover, STRS Ohio and the Ohio Attorney General selected Barrack, Rodos & Bacine to serve as lead counsel in this case only after the firm provided an extensive legal assessment of this case. *Id.* at 4-5.

Concerns that STRS Ohio and the Ohio Attorney General's Office selected Barrack, Rodos & Bacine as lead counsel for reasons other than the firm's professional qualifications and work product are belied by the firm's extensive experience in complex class action lawsuits. The firm has litigated numerous complex class-action lawsuits and appears well versed in the processes and standards that govern securities litigation. STRS Ohio's Br. in Supp. of Mot., Rosen Decl. Ex. D at 2–51, Dkt. 16-5. Indeed, Amalgamated Bank concedes that Barrack, Rodos & Bacine "ha[s] the professional qualifications and experience" to handle this class-action litigation. Mot. Hr'g Tr. 14. Notably, in 2007, Barrack, Rodos & Bacine successfully represented STRS Ohio in a securities suit that resulted in a $475 million settlement. *See In re Merrill Lynch & Co., Inc. Sec., Derivative & ERISA Litig.*, Master File No. 07-cv-9633 (LBS)(AJP)(DFE) (S.D.N.Y.).

Murray Murphy Moul & Basil LLP also has an extensive track record as lead and special counsel in complex class action cases, including as special counsel for STRS Ohio. *See* STRS Ohio's Reply Br., Rosen Reply Decl. Ex. 2 ¶¶ 4–6, Dkt. 28-3. Additionally, unlike the counsel and fee arrangements at issue in *In re LIBOR-Based Financial Instruments Antitrust Litigation* and *IMAX Securities Litigation*, STRS Ohio disclosed the role of Murray Murphy Moul & Basil LLP at the outset of this litigation, and the firm's role is clearly identified. As in previous cases

in which Murray Murphy Moul & Basil LLP functioned as special counsel, the firm will assist STRS Ohio in the production of documents, the preparation of answers to interrogatories and requests for admissions, and the preparation of depositions for STRS Ohio representatives and outside managers. *See id.* ¶ 8, Dkt. 28-3.

Based on the evidence proffered by Amalgamated Bank, the Court cannot conclude that STRS Ohio "will not fairly and adequately protect the interests of the class" or is subject to a unique defense involving pay-to-play that renders it "incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). At this juncture, Amalgamated Bank's assertion that the defendants are likely to litigate the pay-to-play issue and use it to challenge STRS Ohio in future stages of this litigation is speculative. Nor can the Court conclude—based on either the pay-to-play allegations or the alleged associations between counsel and the Ohio Attorney General's Office—that there is a "reasonable basis" to find that STRS Ohio is "incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv). Because Amalgamated Bank has failed to meet its burden to rebut the presumption that STRS Ohio is the most adequate plaintiff to represent the class, the Court appoints STRS Ohio as lead plaintiff and approves Barrack, Rodos & Bacine as lead counsel in this case.

Accordingly, for the foregoing reasons, the Court **ORDERS** the following:

1. STRS Ohio's Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Its Selection of Counsel, Dkt. 16, is **GRANTED**. STRS Ohio is appointed lead plaintiff and STRS Ohio's selection of Barrack, Rodos & Bacine as lead counsel is **APPROVED**.

2. Amalgamated Bank's Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Its Selection of Lead Counsel, Dkt. 18, is **DENIED**.

3. Amy and Stephen Schwartz's Motion to Consolidate Related Actions, to be Appointed Lead Plaintiffs, and to Approve Proposed Lead Plaintiffs' Choice of Counsel, Dkt. 17, is **DENIED**.

**SO ORDERED**.

_____
DABNEY L. FRIEDRICH
United States District Judge

Date: March 9, 2018