UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                     :

PATRICIA A. SHENK, *et al.*,            :
                                       :

        Plaintiffs,             :      NO. 1:17-CV-00145-DLF
                                       :

        v.                            :
                                       :

MALLINCKRODT PLC, *et al.*,      :
                                     :

        Defendants.          :
_____:

**CONSENTED TO MOTION OF LEAD PLAINTIFF STATE TEACHERS
RETIREMENT SYSTEM OF OHIO TO LIFT THE STAY OF THIS
ACTION AND TO GRANT PRELIMINARY APPROVAL OF PROPOSED
SETTLEMENT**

Lead Plaintiff, the State Teachers Retirement System of Ohio, hereby moves, with the consent of Defendants Mallinckrodt plc, Mark Trudeau and Matthew Harbaugh, for this Court to lift the stay of proceedings entered on October 13, 2020 for the purpose of considering for preliminary approval and implementing a $65.75 million proposed Settlement reached by the Parties in the Action.  The motion is based on the statement of points and authorities in support of the motion to lift the stay of this Action and for preliminary approval of the Parties' proposed settlement of this action brought under Section 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Securities & Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5.

A Proposed Order to Lift the Stay and a Proposed Preliminary Approval Order are attached to this motion.

Dated:  March 22, 2022

Respectfully submitted,

**BARRACK, RODOS & BACINE**

By:   */s/ Jeffrey W. Golan*
Leonard Barrack
Mark R. Rosen (Bar No. 336065)
Jeffrey W. Golan (*pro hac vice*)
Jeffrey B. Gittleman (*pro hac vice*)
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Fax: (215) 963-0838

*Attorneys for Lead Plaintiff, State*
*Teachers Retirement System of Ohio and*
*Lead Counsel for the Class*

**MURRAY MURPHY MOUL + BASIL**
**LLP**
Brian K. Murphy (*pro hac vice*)
Joseph F. Murray
Geoffrey J. Moul
1114 Dublin Rd.
Columbus, OH 43215
Telephone: (614) 488-0400
Facsimile: (614) 488-0401
murphy@mmmb.com
murray@mmmb.com
moul@mmmb.com

*Special Counsel for State Teachers*
*Retirement System of Ohio*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

PATRICIA A. SHENK, *et al.*,                  :
                                              :
                        Plaintiffs,           :        NO. 1:17-CV-00145-DLF
                                              :
        v.                                    :
                                              :
MALLINCKRODT PLC, *et al.*,                   :
                                              :
                        Defendants.           :


**STATEMENT OF POINTS AND AUTHORITIES OF LEAD PLAINTIFF
STATE TEACHERS RETIREMENT SYSTEM OF OHIO IN SUPPORT
OF CONSENTED TO MOTION TO LIFT THE STAY OF PROCEEDINGS
IN THIS ACTION AND FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT**


**BARRACK, RODOS & BACINE**
Mark R. Rosen (Bar No. 336065)
Leonard Barrack
Jeffrey W. Golan (pro hac vice)
Jeffrey B. Gittleman (pro hac vice)
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
mrosen@barrack.com
lbarrack@barrack.com
jgolan@barrack.com
jgittleman@barrack.com

**MURRAY MURPHY MOUL + BASIL
LLP**
Brian K. Murphy (pro hac vice)
Joseph F. Murray
Geoffrey J. Moul
1114 Dublin Rd.
Columbus, OH 43215
Telephone: (614) 488-0400
Facsimile: (614) 488-0401
murphy@mmmb.com
murray@mmmb.com
moul@mmmb.com

*Attorneys for Lead Plaintiff, State
Teachers Retirement System of Ohio
and Lead Counsel for the Class*

*Special Counsel for State Teachers
Retirement System of Ohio*

**TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT ...................................................................... 1

II.  HISTORY OF PROCEEDINGS ..................................................................... 2

III. SUMMARY OF PLAINTIFFS' CLAIMS ...................................................... 10

IV.  ARGUMENT.................................................................................................. 11

    A.   This Court Should Grant Preliminary Approval of the Proposed Settlement............. 11

    B.   This Court Should Preliminarily Grant Certification of the Proposed Settlement Class ............................................................................................. 15

    C.   The Court Should Preliminarily Approve the Proposed Plan of Allocation.............. 21

    D.   The Court Should Appoint a Claims Administrator to Handle Notification and Claims Processing and Approve the Method and Content of the Proposed Notice ............... 23

    E.   The Deadlines that the Parties Propose for and in Advance of the Final Approval Hearing................................................................................................ 27

    F.   Lead Counsel Should Be Appointed Class Counsel ................................................... 29

V.   CONCLUSION................................................................................................ 30

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Amchem Prod., Inc. v Windsor*,
   521 U.S. 591 (1997) ..................................................................... 20-21

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013) ..................................................................... 17, 20

*Blackman v. D.C.*,
   454 F. Supp. 2d 1 (D.D.C. 2006) ........................................................ 9

*Bunn v. D.C.*,
   306 F.R.D. 68 (D.D.C. 2015) ...................................................... 17, 18, 21

*Bynum v. District of Columbia*,
   214 F.R.D. 27 (D.D.C. 2003) ............................................................ 18

*DL v. D.C.*,
   713 F.3d 120 (D.C. Cir. 2013) .......................................................... 17

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ............................................................. 12

*Freeport Partners, L.L.C. v. Allbritton*,
   2006 WL 627140 (D.D.C. Mar. 13, 2006) .......................................... 18, 20

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014) ..................................................................... 20

*Howard v. Liquidity Services Inc.*,
   2018 WL 4853898 (D.D.C. Oct. 5, 2018) ............................................ 26

*Hubbard v. Donahoe*,
   958 F. Supp. 2d 116 (D.D.C. 2013) .................................................... 26

*In re Currency Conversion Fee Antitrust Litig.*,
   2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ...................................... 13, 14

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) ..................................................... 12

*In re Fed. Nat'l Mortg. Ass'n Sec., Deriv., & "ERISA" Litig.*
   4 F. Supp. 3d 94, 102 (D.D.C. 2013) ...............................................9, 21

*In re Fed. Nat'l Mortg. Ass'n Sec., Deriv. & "ERISA" Litig.*,
   247 F.R.D. 32, 41 (D.D.C. 2008) ......................................................21

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................ 24

*In re Initial Pub. Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) ................................................................... 15, 23

*In re Ionosphere Clubs, Inc.*,
    156 B.R. 414 (S.D.N.Y. 1993) .......................................................................... 13

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    202 F.R.D. 12 (D.D.C. 2001) ........................................................................... 18

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    2003 WL 22037741 (D.D.C. June 16, 2003) ...................................................... 26

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................ 14

*In re Newbridge Networks Sec. Litig.*,
    926 F. Supp. 1163 (D.D.C. 1996) ..................................................................... 18

*In re Newbridge Networks Sec. Litig.*,
    1998 WL 765724 (D.D.C. Oct. 22, 1998) .......................................................... 26

*In re Pac. Enterprises Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ............................................................................ 14

*In re Pfizer Secs. Litig.*,
    282 F.R.D. 38 (S.D.N.Y. 2012) ........................................................................ 30

*In re Platinum & Palladium Commodities Litig.*,
    2014 WL 3500655 (S.D.N.Y. July 15, 2014) .................................................... 14

*In re Prudential Secs. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 2005) ...................................................................... 15

*In re Shell Oil Refinery*,
    155 F.R.D. 552 (E.D. La 1993) ........................................................................ 11

*In re Southern Ohio Correctional Facility*,
    173 F.R.D. 205 (S.D. Ohio 1997) ..................................................................... 11

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) .............................................................. 12

*In re Traffic Exec. Ass'n-Eastern R.R.s*,
    627 F.2d 631 (2d Cir. 1980) ........................................................................... 14

*In re Vitamins Antitrust Litig.*,
    2001 WL 856292 (D.D.C. July 25, 2001) ........................................................ 11

*In re Warner Chilcott Ltd. Sec. Litig.*,
   2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ..................................................... 24

*Kinard v. E. Capitol Family Rental, L.P.*,
   331 F.R.D. 206–13 (D.D.C. 2019) .................................................................... 11

*Little v. Wash. Metro. Area Transit Auth.*,
   313 F. Supp. 3d 27 (D.D.C. 2018) ................................................................ 9, 14

*Meijer, Inc. v. Warner Chilcott Holdings Co III, Ltd.*,
   246 F.R.D. 293 (D.D.C. 2007) .................................................................... 17, 19

*Morris v. Affinity Health Plan, Inc.*,
   2011 WL 6288035 (S.D.N.Y. Dec. 15, 2011) ) ............................................ 14-15

*In re Pfizer Secs. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) ........................................................................ 30

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .......................................................................................... 21

*Redwen v. Sino Clean Energy, Inc.*,
   2013 WL 12129279 (C.D. Cal. Mar. 13, 2013) ................................................. 9

*Richardson v. L'Oréal USA, Inc.*,
   991 F. Supp. 2d 181 (D.D.C. 2013) ................................................................. 17

*Shenk v. Mallinckrodt plc*, 2019 WL 3491485 (D.D.C. July 30, 2019) ................................. 3, 10

*Swedish Hosp. Corp. v. Shalala*,
   1 F.3d 1261 (D.C. Cir. 1993) ........................................................................... 26

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ............................................................................. 15

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
   283 F.R.D. 199 (S.D.N.Y. 2012) ..................................................................... 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir.), *cert. denied*, 544 U.S. 1044 (2005) .................................. 14

## Statutes

15 U.S.C. § 78u-4 ............................................................................................. 24, 26

## Rules

Fed. R. Civ. Proc. 23 .................................................................................. *passim*

iv

## I.   PRELIMINARY STATEMENT

Lead Plaintiff, the State Teachers Retirement System of Ohio ("Lead Plaintiff" or "STRS Ohio"), respectfully submits this statement of points and authorities in support of the accompanying consented to motion to lift the stay of proceedings in this Action for the purpose of presenting for preliminary approval and implementing the Parties' proposed settlement of this Action brought under Section 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j ("Exchange Act"), and Securities & Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5.[1]  Among the forms of relief sought in this motion and the accompanying Proposed Preliminary Approval Order ("Proposed Order"), Lead Plaintiff requests: preliminary approval of the Settlement; preliminary certification of a Settlement Class, including the appointment of Settlement Class representatives; preliminary approval of the proposed Plan of Allocation; approval of the content and method of notification of the proposed Settlement; appointment of Lead Counsel as class counsel; and the scheduling of a final approval hearing and establishing related deadlines for briefing, exclusions and objections.  A proposed Order to Lift the Stay of Proceedings is also being submitted.

If the Court is inclined to grant preliminary approval of the Settlement, the Parties respectfully request that the Court set the Final Approval Hearing ("Hearing") for a date no earlier than 110 days from entry of the Proposed Order.  *See* Proposed Order ¶ 5.  Once the Preliminary Approval Order is entered, the Settlement would proceed on the following schedule:

| | |
|---|---|
| 20 Business Days Later | Notice and Proof of Claim mailed by the Claims Administrator and posted on its and Lead Counsel's websites |
| 10 Days Later | Summary Notice posted in the *Investor's Business Daily* and on PR Newswire |

---

[1] Parties refers to the Lead Plaintiff and Defendants Mallinckrodt plc, Mark Trudeau and Matthew Harbaugh ("Defendants").

| | |
|---|---|
| 45 Days Before Hearing | Filing of motion for final approval of settlement and plan of allocation, and filing of fee and expense application |
| 30 Days Before Hearing | Deadlines for submission of objections and/or exclusion requests |
| 10 Days Before Hearing | Filing of reply briefs in further support of motion for final approval of settlement and plan of allocation, and fee and expense application |
| 7 Days Before Hearing | Filing of proof of mailing of Notice and Proof of Claim and Issuance of Summary Notice |
| Six Months After Mailing and Posting of the Notice | Deadline for submission of Proof of Claim forms |

## II.    HISTORY OF PROCEEDINGS

Beginning on January 23, 2017, a series of proposed class actions alleging violations of the federal securities laws by some or all of the Defendants were filed in this Court:  *Shenk, et al. v. Mallinckrodt plc, et al.*, Case No. 17 Civ. 145; *Patel, et al. v. Mallinckrodt plc, et al.*, Case No. 17 Civ. 171; *Schwartz, et al. v. Mallinckrodt plc, et al.*, Case No. 17 Civ. 447; *Fulton County Employees' Ret. Sys., et al. v. Mallinckrodt plc, et al.*, Case No. 17 Civ. 534.

Multiple plaintiffs and other investors in Mallinckrodt common stock moved for consolidation and appointment as lead plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. §§ 78j and 78t, as amended by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. §§ 78u-4, *et seq.*) ("PSLRA").  Following extensive submissions and a March 1, 2018 oral argument, the Court entered an order on March 9, 2018, approving STRS Ohio's motion for consolidation of the cases, appointment of STRS Ohio as Lead Plaintiff for the consolidated action ("Action"), and approval of Barrack, Rodos & Bacine as Lead Counsel and Murray Murphy Moul & Basil LLP as Special Counsel to STRS Ohio.  ECF No. 45.

On May 18, 2018, Lead Plaintiff filed a 109-page, 240 paragraph Consolidated Class Action Complaint ("Complaint") that alleged that the Defendants (and Hugh O'Neill, who was subsequently dismissed without prejudice by agreement) violated Sections 10(b) and 20(a) of the

Exchange Act and asserted claims on behalf of all persons or entities, other than Defendants and their affiliates, who purchased Mallinckrodt common stock from July 14, 2014 through November 6, 2017, and suffered damages as a result.  ECF No. 51.

On July 17, 2018, Defendants moved to dismiss the Complaint.  On August 30, 2018, Lead Plaintiff filed its 67-page opposition brief that responded to the dismissal motions filed by the Company and by the Individual Defendants.  ECF No. 64.  On October 1, 2018, Defendants filed their reply papers, and on November 19, 2018, the Court held a lengthy oral argument on Defendants' motions to dismiss.  Defendants thereafter filed a notice of supplemental authority to which Lead Plaintiff responded on December 3, 2018.  ECF No. 71.

On July 30, 2019, the Court issued a Memorandum Opinion and Order denying Defendants' motions to dismiss in part and granting them in part, which was reported as *Shenk v. Mallinckrodt plc*, 2019 WL 3491485 (D.D.C. July 30, 2019) ("Memorandum Opinion and Order").  ECF No. 75.  In the Memorandum Opinion and Order, the Court dismissed the claims based on alleged misstatements before October 6, 2015, and one claim based on an alleged misrepresentation made on May 19, 2017, and denied the motions to dismiss for the remainder of the claims.  [A summary of the claims remaining in the Action is included below, at pages 9-10.]  The impact of the Memorandum Opinion and Order was to limit the time period of Lead Plaintiff's claims to a period from October 6, 2015 through November 6, 2017, inclusive ("Class Period").

On September 23, 2019, Defendants filed their respective answers to the Complaint.  Defendants denied the claims and asserted a number of affirmative defenses.

Fact discovery in the Action commenced in September 2019.  As part of this fact discovery, the Parties engaged in extensive meet and confers on the document requests served in

the case, and produced and exchanged over 250,000 pages of documents prior to the mediation process described below.

On July 29, 2020, Lead Plaintiff moved to certify a class of investors consisting of all persons or entities, other than Defendants and their affiliates, who purchased or otherwise acquired Mallinckrodt common stock during the Class Period.  ECF No. 94.  Lead Plaintiff sought to have STRS Ohio and the Teamsters Local 677 Health Service and Insurance Plan ("Local 677"), which had also purchased Mallinckrodt common stock during the Class Period, certified as representatives of the Class.  In support of the motion for class certification, Lead Plaintiff submitted a 34-page memorandum of law, and a declaration of counsel that provided factual support and exhibits, including a 48-page expert report of Michael L. Hartzmark, Ph.D. ("Dr. Hartzmark") that itself had nearly 300 pages of exhibits.

Following discussions in July and August 2020, Lead Plaintiff and Defendants agreed to pursue mediation ("Mediation") to explore reaching a global resolution of the Action before the Honorable Layn Phillips (Ret.), a former federal district court judge in the United States District Court for the Western District of Oklahoma ("Mediator").  On September 1, 2020, the Court entered a stay of the Action pending a conclusion of the Mediation based on a joint motion of the Parties.  ECF No. 95 and Minute Order.  Counsel for Lead Plaintiff and Defendants began to establish a framework for the Mediation.

On October 12, 2020, Mallinckrodt filed a Notice of Suggestion of Pendency of Bankruptcy and Automatic Stay of Proceedings in the Action ("Notice of Bankruptcy") stating that it and its affiliated debtors had commenced on the same date bankruptcy cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, *et seq.* ("Bankruptcy Code") in the United States Bankruptcy Court in the District of Delaware ("Bankruptcy Court"), jointly

administered for procedural purposes only under the caption, *In re Mallinckrodt plc*, Case No. 20-12522-JTD ("Bankruptcy Action").   ECF No. 96.   Through the Notice of Bankruptcy, Mallinckrodt informed the Court that this Action was automatically stayed with regard to Mallinckrodt pursuant to Section 362(a) of the Bankruptcy Code.   This Court then entered a Minute Order on October 13, 2020, staying the Action against all Defendants.   Lead Plaintiff's motion for class certification remained on the case docket, but neither the Parties nor the Court undertook any further proceedings on the motion.

Upon the filing of the Notice of Bankruptcy, Lead Counsel retained counsel to assist in the representation of STRS Ohio and the putative Class in the Bankruptcy Action.   On November 15, 2020, the Debtors and Lead Plaintiff filed a stipulation in the Bankruptcy Action requesting that the Bankruptcy Court modify the automatic stay and the additional requested stay regarding the Individual Defendants solely to allow the Parties to participate in the Mediation.   On November 16, 2020, the Bankruptcy Court entered an Order approving that stipulation.

In advance of the Mediation, the Parties – through their counsel – exchanged additional documents, and prepared and exchanged written submissions to the Mediator in an effort to inform the Mediator of the evidence, claims and defenses of the Parties, and the relative positions of the Parties on key issues in the case.   The Parties and their counsel conducted two rounds of simultaneous submissions as part of the Mediation, submitting and exchanging opening statements on November 11, 2020 (which collectively appended over 150 exhibits) and responding submissions on November 25, 2020 (which collectively appended an additional 31 exhibits).

The Mediation was conducted remotely by Zoom over two separate sessions.   The Parties and their counsel, and relevant Directors and Officers ("D&O") Insurers and their counsel,

attended both sessions in full.  Counsel for Local 677, identified above, also participated during certain parts of the Mediation.  The first Mediation session was held on December 7, 2020 from 9:00 a.m. to 7:00 p.m., eastern time; the session did not end in an agreement to settle the Action. The second Mediation session was scheduled for January 12, 2021.  Between these two dates, the Parties and their counsel and the D&O Insurers engaged in numerous additional discussions with the Mediator in an attempt to narrow the gap between them in advance of the second Mediation session.

On January 12, 2021, during the second Mediation session, which lasted from 9:00 a.m. to 5:30 p.m., eastern time, the Mediator continued to engage with the Parties and D&O Insurers. At the end of the day, the Parties conditionally agreed to settle this Action for a cash payment of $65,750,000 for the benefit of the Class contingent on approval by the board of directors of Mallinckrodt and Lead Plaintiff's board (which approvals were obtained shortly thereafter) and an order of the Bankruptcy Court authorizing Mallinckrodt to enter into the Settlement (which authorization has been recently obtained, as discussed below).

Prior to agreeing to the Settlement, Lead Plaintiff and Lead Counsel had conducted an in-depth investigation of the claims, defenses and underlying events relating to the Action.  This investigation included, among other things, review and analysis of: (i) publicly available information concerning the Defendants, including newspaper articles, online publications, analyst reports, and commentary; (ii) regulatory filings made by Defendants with the SEC; (iii) materials on public websites of the U.S. Food and Drug Administration ("FDA"), Centers for Medicare and Medicaid Services ("CMS") and Federal Trade Commission ("FTC"); (iv) securities analysts' reports, public statements, media reports, and court records; and (v) over 250,000 pages of documents.  Lead Counsel also identified, retained and worked with an expert

in the field of economics; met and conferred with Defendants' counsel; and participated (along with Lead Plaintiff representatives) in the Mediation process, which further brought into focus the strengths and weaknesses of the liability, loss causation and damages aspects of the case, as well as the limits of the potential sources of payment for any recovery in the case.

On January 13, 2021, counsel for Lead Plaintiff and counsel for Defendants, on behalf of their respective clients, entered into a term sheet (the "Term Sheet") setting forth, among other things, the agreement to settle and release all claims asserted in the Action against the Defendants in return for a cash payment by the D&O Insurers of $65,750,000 for the benefit of the Class, subject to certain terms and conditions, including the execution of a stipulation and agreement of settlement and related papers and approval by the Bankruptcy Court and this Court.

The Parties' counsel thereafter undertook extensive discussions and drafting sessions to create and formalize the Settlement documents, including the (a) Stipulation and Agreement of Settlement ("Stipulation"); (b) Notice of Class Action, Proposed Settlement, Motion for Attorneys' Fees and Expenses, and Settlement Hearing ("Notice"); (c) Proof of Claim and Release; (d) [Proposed] Final Judgment and Order of Dismissal with Prejudice ("Final Judgment"); (e) [Proposed] Order Preliminarily Approving Proposed Settlement and Providing for Notice ("Proposed Preliminary Approval Order" or "Proposed Order"); and (g) Summary Notice of Class Action, Proposed Settlement, Motion for Attorneys' Fees and Expenses, and Settlement Hearing ("Summary Notice"). The Settlement documents were executed as of May 18, 2021, and counsel for Mallinckrodt filed on that day a Motion for Entry of an Order Approving Debtors' Entry into and Performance Under a Settlement Agreement Between the Shenk Plaintiffs and Shenk Defendants and Granting Related Relief ("Bankruptcy Court Motion").

Given other matters pending in the Bankruptcy Court, including but not limited to an initial proposed Plan of Reorganization and amendments thereto, and various objections thereto, the Parties agreed that the Bankruptcy Court Motion would not be submitted for final consideration by the Bankruptcy Court until after that Court had ruled on confirmation of a plan of reorganization.  In the meantime, the Debtors and Lead Plaintiff filed their responses to objections and a reservation of rights that had been filed in response to the Bankruptcy Court Motion.

On February 3, 2022, the Bankruptcy Court issued an Opinion approving the Debtor's proposed plan, with one ordered modification.  Thereafter, following a hearing on February 22, 2022, the Bankruptcy Court granted the Bankruptcy Court Motion on February 23, 2022, which authorizes Mallinckrodt to enter into the Settlement and approves the use of D&O insurance proceeds to fund the Settlement payment on behalf of the Company and the Individual Defendants.  *In re Mallinckrodt plc*, Case No. 20-12522-JTD, ECF No. 6608 (Feb. 23, 2022).

Based upon their investigation, prosecution and mediation of the case, Lead Plaintiff and its counsel have concluded that the terms and conditions of the Stipulation, including the payment of $65,750,000 in settlement, constitutes an outstanding achievement, especially considering Mallinckrodt's financial condition and the limitations imposed by the Company's bankruptcy proceedings, and are fair, adequate and reasonable to the members of the Class and in their best interests.  Based on Lead Plaintiff's direct oversight of the prosecution of this matter and with the advice of its counsel and concurrence of Local 677 and its counsel, Lead Plaintiff has agreed to settle the claims raised in the Action pursuant to the terms and provisions of the Stipulation, after considering: (a) the financial benefit that the members of the Class will receive under the proposed Settlement; (b) the significant risks of continued litigation and trial, including

in light of Mallinckrodt's bankruptcy; and (c) the desirability of permitting the Settlement to be consummated as provided by the terms of the Stipulation.  *See Blackman v. D.C.*, 454 F. Supp. 2d 1, 8 (D.D.C. 2006) ("presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery"). *See generally In re Fed. Nat'l Mortg. Ass'n Sec., Deriv., & "ERISA" Litig.*, 4 F. Supp. 3d 94, 102 (D.D.C. 2013) ("There is no single test in our Circuit for evaluating a proposed class action settlement under Rule 23(e)."); *Little v. Wash. Metro. Area Transit Auth.*, 313 F. Supp. 3d 27, 33 (D.D.C. 2018) (same).  Moreover, "[a]t the preliminary approval stage, some of [the] factors [for judging a proposed settlement] cannot be fully assessed. Accordingly, a full fairness analysis is unnecessary. Rather, the court need only review the parties' proposed settlement to determine whether it is within the permissible 'range of possible judicial approval' and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate." *Redwen v. Sino Clean Energy, Inc.,* 2013 WL 12129279, *5 (C.D. Cal. Mar. 13, 2013) (citations omitted).

Defendants have denied and continue to deny any wrongdoing or that they have committed any act or omission giving rise to any liability or violation of law, including the U.S. securities laws.  Defendants have denied and continue to deny each and every one of the claims alleged in the Action on behalf of the proposed class, including all claims in the Complaint. Defendants also have denied, and continue to deny the allegations that Lead Plaintiff or Class Members have suffered damage or were otherwise harmed by the conduct alleged in the Action. Rather, as stated in the Stipulation, Defendants are entering into the Stipulation solely to eliminate the uncertainty, burden, and expense of further protracted litigation.  Defendants have

determined that it is desirable and beneficial to them that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation.

## III.    SUMMARY OF PLAINTIFFS' CLAIMS

This case primarily concerns Defendants' alleged misrepresentations and omissions concerning the Company's key drug, Acthar® Gel ("Acthar").  The Complaint alleges that throughout the Class Period, Defendants made false and misleading statements and failed to disclose material adverse facts about the exposure of Acthar to Medicare and Medicaid payments, a pending investigation of the FTC, and the long-term sustainability of the Company's revenues from Acthar.  Comp. ¶¶ 116-126, 127-151, 152-170.[2]  In the Complaint, Lead Plaintiff asserts claims grounded in fraud based on alleged materially false and misleading statements made with scienter against the Company and the Individual Defendants for violations of Sections 10(b) and 20(a) of the Exchange Act.

In the Memorandum Opinion and Order of July 30, 2019 (ECF No. 75), the Court sustained claims regarding the following alleged misstatements: (1) an October 6, 2015 statement by the Company's CEO, Defendant Mark Trudeau, concerning the portion of Acthar sales attributable to Medicare and Medicaid; (2) a statement in the Company's Form 10-K issued on November 29, 2016 relating to a Federal Trade Commission investigation; and (3) a series of statements in 2017 concerning Acthar sales and prospects, including financial and Acthar-related guidance to the market and insurer acceptance of Acthar claims.  *See Shenk,* 2019 WL 3491485 at *11-13, *16-20, *23-26.  The Court further sustained the Complaint's claim that when the alleged corrective disclosures were made, the price of Mallinckrodt's stock fell, which is the basis of the damages that were asserted on behalf of the putative Class.  *Id.* at *6.

---

[2] References to allegations in the Complaint (ECF No. 51) appear as "Comp. ¶ __."

## IV.   ARGUMENT

### A.   This Court Should Grant Preliminary Approval of the Proposed Settlement

The principles governing a motion for preliminary approval were set forth by then Chief

Judge Hogan:

> The Court should grant preliminary approval of a class action settlement "if the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval...." *See* Manual for Complex Litigation, Third, § 30.41 (West 1999); *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La 1993) ("finding that, at the preliminary approval stage, the Court's only task is to determine whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preliminary preferential treatment to class representatives or segments of the class, and falls within the range of possible [judicial] approval."). Preliminary approval of a proposed settlement to a class action lies within the sound discretion of the Court. Id.; *see also In re Southern Ohio Correctional Facility*, 173 F.R.D. 205, 211 (S.D. Ohio 1997) (the district court bases its preliminary approval "upon its familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement").

*In re Vitamins Antitrust Litig.*, 2001 WL 856292, *4 (D.D.C. July 25, 2001).  Another court in

this District explained:

> In evaluating proposed class action settlements under Rule 23(e), courts in this Circuit generally consider the following factors: (1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strength of the plaintiffs' case; (3) the status of the litigation at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel.

*Kinard v. E. Capitol Family Rental, L.P.*, 331 F.R.D. 206, 212–13 (D.D.C. 2019).

Especially taking into account the circumstances relating to Mallinckrodt's financial

condition and eventual bankruptcy proceedings, the terms of the proposed Settlement are "within

the range of possible approval."  Although Lead Plaintiff and Lead Counsel believe that the

claims asserted in the Action against the Defendants are meritorious, continued litigation posed

the real risk that following a trial, a lesser recovery (or no recovery at all) would result. Defendants would continue to argue, *inter alia*, that the statements at issue were not materially false and misleading, and that in any event the losses suffered by the members of the Class were not caused by the alleged misrepresentations and omissions.  Each of these issues involves complex legal and factual questions, and there remains a risk that a jury might agree with the Defendants on one or more of these issues.

Judge Phillips played a critical role in validating the proposed Settlement when he concluded, "The proposed Settlement is the result of vigorous arm's-length negotiation by all involved Parties," observing "I believe, based on my extensive discussions with the Parties and the information made available to me both before and during the Mediation, that the Settlement was negotiated in good faith and that the Settlement is fair and reasonable."  *See* Proposed Notice at 15.  Judge Phillips' assessment, which is based upon his serving as the Mediator for the negotiations in this Action as well as his track record of successfully mediating hundreds of securities and other class actions (*see* http://www.phillipsadr.com/bios/layn-phillips/), constitutes a strong factor favoring approval.  *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (approving settlement negotiated with the assistance of retired Judge Phillips and referring to him as "one of the most prominent and highly skilled mediators of complex actions"). *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) (the use of an experienced mediator in the settlement negotiations "strongly supports a finding that they were conducted at arm's-length and without collusion").

Despite Mallinckrodt's bankruptcy filing, Defendants agreed to mediation with Judge Phillips.  Then, over the course of two full-day mediation sessions and other communications with Judge Phillips, Lead Plaintiff convinced the D&O insurers to pay over $65 million to settle the Class members' claims, notwithstanding the pendency of other significant claims against the bankruptcy estate. *See, e.g.,* Wall St. Journal, *"Mallinckrodt Cleared to Leave Bankruptcy Under $1.7 Billion Opioid Deal"* (Feb. 3, 2022).  By achieving the commitment to pay over $65 million to settle the claims of the putative Class here, Lead Counsel had to secure the significant contribution of multiple layers of D&O coverage notwithstanding other claims that were also pending against the Defendants at that time.  Under these circumstances, this recovery is clearly impressive. [3]

The Settlement was reached only after completion of: (1) Lead Plaintiff's initial factual investigation; (2) Lead Plaintiff's analysis of Mallinckrodt's public filings and public statements; (3) Lead Plaintiff's review of news articles and analyst reports concerning Mallinckrodt; (4) interviewing several confidential witnesses in connection with drafting the Complaint; (5) briefing and argument on Defendants' motions to dismiss; (6) the review and analysis of over 250,000 pages of documents produced in the litigation; (7) preparation and filing of Lead Plaintiff's motion for class certification; (8) consultations with experts on market efficiency, loss causation and damages; and (9) multiple mediation sessions facilitated by Judge Phillips.  Thus, the Settlement was not achieved until the Parties had sufficient familiarity with the issues in the case to evaluate its merits – including the realities posed by Mallinckrodt's financial condition

---

[3] To the extent that the Court may consider the magnitude of the settlement amount in the context of preliminary approval of the settlement, multiple courts have held that "'[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.'" *In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 3247396, *6 (S.D.N.Y. Nov. 8, 2006), *quoting In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993).

and bankruptcy proceedings – and agreed on a settlement figure that was acceptable to Defendants and fair, reasonable and adequate to the Class.

The Court "must determine whether the terms of the proposed settlement warrant preliminary approval …. [by] mak[ing] a 'preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig*., 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (citation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir.), *cert. denied*, 544 U.S. 1044 (2005); *In re NASDAQ Market-Makers Antitrust Litig*., 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.").

In determining whether a proposed settlement is fair, reasonable and adequate, the court considers the negotiating process leading up to the settlement to determine the procedural, as well as the substantive fairness of the proposed settlement. *In re Platinum & Palladium Commodities Litig.*, 2014 WL 3500655, *11 (S.D.N.Y. July 15, 2014).

> Preliminary approval, at issue here, "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness," *In re Traffic Exec. Ass'n-Eastern R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980). A district court should preliminarily approve a proposed settlement which "appears to be the product of serious, informed non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval." *In re NASDAQ*, 176 F.R.D. at 102.

*Id.* Courts have also indicated their strong preference for settlements. *See Little*, 313 F. Supp. 3d at 34; *In re Pac. Enterprises Sec. Litig*., 47 F.3d 373, 378 (9th Cir. 1995) (when reviewing complex class action settlements, courts have a strong judicial policy that favors settlements); *see*

*also Morris v. Affinity Health Plan, Inc*., 2011 WL 6288035, \*2 (S.D.N.Y. Dec. 15, 2011) ("If, after a preliminary evaluation of the proposed settlement, the court finds that it 'appears to fall within the range of possible approval,' the court shall order that the class members receive notice of the settlement.") (citation omitted); *In re Prudential Secs. Inc. Ltd. P'ships Litig*., 163 F.R.D. 200, 209 (S.D.N.Y. 2005) ("The Court's function now is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.") (internal quotation marks omitted); *In re Initial Pub. Offering Sec. Litig*., 243 F.R.D. 79, 87 (S.D.N.Y. 2007) ("If the court preliminarily approves the settlement, it then must direct the preparation of notice informing class members of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing."); *see also Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1376 (9th Cir. 1993) ("one factor predominates to make clear that the district court acted within its discretion. That factor is [defendant's] financial condition. At the time of the settlement it was involved in negotiations with its creditors to restructure its debt and had had an involuntary bankruptcy petition recently filed against it.").

The facts recited above demonstrate that the proposed Settlement was the product of serious, informed and non-collusive negotiations, provides no preferential treatment to the proposed class representatives, and represents an impressive recovery for the Class especially in light of Mallinckrodt's bankruptcy and substantial exposure to other claims.

**B.      This Court Should Preliminarily Grant Certification of the Proposed Settlement Class**

The Parties agreed, as part of and as a condition for the Settlement, to have the Settlement proceed on behalf of a settlement class.   Thus, while the Court must independently decide whether to approve all aspects of the Settlement, including class certification, all Parties agree that certification of a settlement class is warranted.

15

Consistent with the Stipulation and pursuant to Rules 23(a), 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure, the Parties seek certification of a settlement class ("Settlement Class") consisting of all persons or entities who purchased or otherwise acquired Mallinckrodt common stock between October 6, 2015 and November 6, 2017, inclusive (the "Class Period"), and suffered damages as a result.[4]

> In accordance with Federal Rule 23, certification is appropriate if:
>
> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Additionally, "common" issues of law or fact must "predominate over any questions affecting only individual members," and a class action must be "superior" to other methods of adjudication.   Fed. R. Civ. P. 23(b)(3).   Rule 23(e) specifically authorizes the certification of "a class proposed to be certified for purposes of settlement … with the court's approval"; subpart (1) sets forth the requirements for notice to the proposed class while subpart

---

[4]  The initial complaints filed in this Action alleged a class period from July 14, 2014 to January 17, 2017, which is the day before the FTC filed a complaint and entered into a consent decree with the Company relating to alleged anti-competitive actions.  The Complaint filed by STRS Ohio (ECF No. 51) added claims based on other alleged misstatements and omissions and alleged a class period from July 14, 2014 through November 6, 2017.  Pursuant to the Memorandum Opinion and Order dismissing certain of the claims and upholding others, the Settlement contemplates and the Parties seek certification of a Settlement Class – consistent with the motion for class certification filed by STRS Ohio on July 29, 2020 – on behalf of purchasers of Mallinckrodt stock from October 6, 2015 through November 6, 2017, inclusive.

Excluded from the Class are: (a) Defendants; (b) members of the immediate family of each of the Individual Defendants; (c) any subsidiary or affiliate of Mallinckrodt and the directors, officers and employees of the Company or its subsidiaries or affiliates; (d) any person, firm, trust, corporation, officer, director, or any other individual or entity in which any Defendant has a controlling interest; and (e) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

(2) addresses the requirements to secure approval of the settlement proposal.[5]

**Numerosity.**  As presented in Lead Plaintiff's motion for class certification, Mallinckrodt began the Class Period with approximately 116.3 million shares outstanding and concluded the Class Period with approximately 95.0 million shares.  The average weekly trading volume in Mallinckrodt common stock was 11.6 million shares throughout the Class Period, and thus, there are likely thousands of Class members.  "Absent unique circumstances, 'numerosity is satisfied when a proposed class has at least forty members.'"  *Bunn*, 306 F.R.D. at 76 (quoting *Richardson v. L'Oréal USA, Inc.*, 991 F. Supp. 2d 181, 196 (D.D.C. 2013)); *Meijer, Inc. v. Warner Chilcott Holdings Co III, Ltd.*, 246 F.R.D. 293, 306 (D.D.C. 2007) (numerosity satisfied with class consisting of approximately 30 members).  Thus, the numerosity prong is easily satisfied.

**Commonality, Typicality and Adequacy.**  The Action involves many common issues of law and fact, readily satisfying Rule 23's commonality requirement and the proposed class representatives' claims are typical of the claims of the Class because, like all other Settlement Class members, they purchased Mallinckrodt common stock at prices that Lead Plaintiff alleges were artificially inflated by Defendants' misrepresentations.  Moreover, Lead Plaintiff (which purchased Mallinckrodt stock during the time periods relevant to the first two sets of claims) is a large institutional investor that, along with Local 677 (which purchased Mallinckrodt stock during the time period relevant to the third set of claims and was proposed by STRS Ohio as an additional class representative), has adequately protected the Class' interests through its active

---

[5] A determination as to class certification addresses only whether the requirements of Rule 23 have been met, not whether the plaintiffs will prevail on the merits.  *See DL v. D.C.*, 713 F.3d 120, 125-26 (D.C. Cir. 2013); *accord Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).  Thus, "the point of Rule 23 'is not to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently.'"  *Coleman through Bunn v. D.C.*, 306 F.R.D. 68, 78 (D.D.C. 2015) (quoting *Amgen*, 568 U.S. at 460).

oversight of this litigation and direct participation in the Mediation process, and STRS Ohio further selected competent and experienced counsel to pursue the claims on behalf of all Class members.

Commonality exists "'where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" *Freeport Partners, L.L.C. v. Allbritton*, 2006 WL 627140, at *5 (D.D.C. Mar. 13, 2006) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 26 (D.D.C. 2001)). Indeed, lawsuits such as this one, where investors sue under the federal securities laws for misrepresentations or omissions affecting the price of a stock, are ideally suited for class treatment. *In re Newbridge Networks Sec. Litig.*, 926 F. Supp. 1163, 1176 (D.D.C. 1996) (common questions exist and a class action is appropriate "where members of a class are subject to the same misrepresentations and omissions, and where alleged misrepresentations fit within a common course of conduct").[6]

Typicality is also established for purposes of preliminarily certifying the Settlement Class. A class representative satisfies the typicality requirement "if the representative's 'claims are based on the same legal theory as the claims of the other class members' and her 'injuries arise from the same course of conduct that gives rise to the other class members' claims.'" *Bunn*, 306 F.R.D. at 83 (quoting *Bynum v. District of Columbia*, 214 F.R.D. 27, 35 (D.D.C. 2003)). Lead Plaintiff respectfully submits that the similarity of the claims of the class representatives with the claims of the Class satisfy these requirements.

---

[6] Based on the existence of common questions, courts have found that the class action mechanism is particularly well-suited for securities actions because the elements of the cause of action generally relate to the conduct of the defendants – their allegedly false and misleading public statements and omissions made in violation of the federal securities laws – and individual damages are likely to be too low to justify individual lawsuits. As such, many courts have held that "suits alleging violations of securities law, … are 'especially amenable' to class action certification." *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 205-06 (S.D.N.Y. 2012) (collecting cases).

STRS Ohio has also shown itself to be a more than adequate class representative.  From the time of its appointment as Lead Plaintiff by this Court, STRS Ohio actively oversaw the litigation of the case; searched for and produced documents in response to Defendants' document requests; brought in a second proposed class representative to provide a more complete representation of the Class; and, among other things, participated in and supported its counsel's efforts throughout the Mediation, the settlement documentation process, and during the Bankruptcy Court proceedings.[7]  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  When the class representatives have "a sufficient interest in the outcome of the case to ensure vigorous advocacy" and do not have interests "antagonistic to those of the proposed class," the adequacy requirement is met.  1-14A James Moore, *et al.*, *Moore's Manual Fed. Practice & Procedure* § 14A.25[1] (3d ed. 2012).  As has been held in this District:

> "[t]wo criteria for determining the adequacy of representation are generally recognized: (1) the named representative must not have antagonistic or competing interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel."

*Meijer*, 246 F.R.D. at 302 (citation omitted).  These factors are met.

**Predominance and Superiority.**  Lead Plaintiff further respectfully submits that this Action satisfies the predominance and superiority requirements of Rule 23(b)(3).  "The

---

[7] STRS Ohio is one of the nation's premier retirement systems, serving more than 515,000 active, inactive and retired Ohio public educators. With investment assets of $96.7 billion (including short-term investments) as of June 30, 2021, STRS Ohio is one of the largest public pension funds in the country.  As asserted in the motion for class certification, STRS Ohio purchased more than 200,000 shares of Mallinckrodt stock during the Class Period, and suffered a loss when Mallinckrodt's stock declined in value on November 16-17, 2016 and January 18, 2017.  The proposed additional class representative, Local 677, a pension fund serving more than 2,800 active, inactive and retired beneficiaries with investment assets of over $90 million as of June, 2020, purchased 120 shares of Mallinckrodt stock on June 23, 2017 and continued to hold the stock through the end of the Class Period, thereby suffering a loss with the price decline on November 7, 2017.

'predominance' test of Rule 23 (b)(3) is generally satisfied 'when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position.'" *Freeport Partners*, 2006 WL 627140, at *8 (citation omitted). Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof,'" merely "that common questions 'predominate over any questions affecting only individual [class] members.'" *Amgen*, 568 U.S. at 469 (emphasis omitted). For class certification purposes, the Supreme Court has further held that falsity, materiality, and loss causation are common issues because the failure to prove any one of these elements "would end the case" for all putative class members. *See id.*, 568 U.S. at 467-68 ("materiality is a 'common question' for purposes of Rule 23(b)(3)") (citation omitted).

Here, the expert report of Dr. Hartzmark, submitted in support of Lead Plaintiff's motion for class certification, concluded that the market for Mallinckrodt stock was efficient throughout the Class Period and that damages could be calculated using a common methodology on a class-wide basis. These findings – along with the claims that Lead Plaintiff asserted in this Action on behalf of the Settlement Class – support that the Class may invoke the "fraud-on-the-market" presumption of reliance, which in turn supports a finding of predominance. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014). Thus, as in most securities fraud class action cases, Defendants' alleged misconduct affected all Class members in the same manner – namely, Defendants' alleged false and misleading statements and omissions is alleged to have artificially inflated the price of Mallinckrodt common stock. *See Amchem Prod., Inc. v Windsor*, 521 U.S. 591, 625 (1997) ("Predominance is a test readily met in certain cases alleging ... securities

fraud"); *In re Fed. Nat'l Mortg. Ass'n Sec., Deriv. & "ERISA" Litig.*, 247 F.R.D. 32, 41 (D.D.C. 2008) (securities fraud suits "are particularly amenable to class certification").

The "superiority" factor under Rule 23(b)(3) is satisfied because: (a) numerous investors are alleged to have suffered damages as a result of Defendants' misconduct; (b) it is unlikely that investors who lost relatively small amounts of money would file individual actions due to litigation costs (indeed, the statute of limitations has run on the claims in this Action and only one set of investment funds filed an "opt out" individual complaint); (c) it is desirable to hear all such claims in one court; and (d) there is no difficulty in maintaining this case on behalf of the Settlement Class.  Courts recognize the class action device as superior to other methods for fairly and efficiently adjudicating large-scale securities class actions, which assert claims on behalf of numerous individuals.  The Supreme Court has explained that class actions "permit the plaintiffs to pool claims which would be uneconomical to litigate individually" and that "most of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *accord Bunn*, 306 F.R.D. at 87.

Accordingly, the Parties' respectfully submit that this Court should preliminary certify, for purposes of Settlement only, a Settlement Class under Rules 23(a), 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure.

### C.      The Court Should Preliminarily Approve the Proposed Plan of Allocation

Many courts, including courts in this District, have confirmed that a plan of allocation suffices if the plan has "a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Fed. Nat'l Mortg. Sec. Deriv., & "ERISA" Litig.,* 4 F. Supp. 3d at 108.  Here, Lead Plaintiff and Lead Counsel respectfully submit that the proposed

Plan of Allocation, which is described in detail in a multi-page discussion in the Notice, is fair and reasonable.

In the Memorandum Opinion and Order, the Court sustained the claims alleging that Defendants violated the federal securities law by: (1) on October 6, 2015, misrepresenting the portion of Acthar sales attributable to Medicare and Medicaid; (2) in a Form 10-K filed on November 29, 2016, making false statements relating to an FTC investigation; and (3) from January 19, 2017 through August 8, 2017, making a series of false and misleading statements concerning Acthar sales and prospects, including financial and Acthar-related guidance to the market. Given this, the operative claims allege that Defendants made false statements and omitted material facts regarding three separate areas, which had the effect of artificially inflating the prices of Mallinckrodt common stock over three distinct time periods. For the first claim, Lead Plaintiff alleged Mallinckrodt's common stock price was inflated beginning on October 6, 2015 and that corrective disclosures removed this artificial inflation from the price of Mallinckrodt common stock on November 16-17, 2016. For the second claim, Lead Plaintiff alleged Mallinckrodt's common stock price was inflated beginning on November 29, 2016 and that corrective disclosures removed this artificial inflation from the price of the on January 18, 2017. For the third claim, Lead Plaintiff alleged Mallinckrodt's common stock price was inflated beginning on January 19, 2017 and that corrective disclosures removed this artificial inflation from the price of the stock on November 7, 2017.

The proposed Plan mirrors the claims in this Action. In order to have a "Recognized Loss Amount" under the Plan of Allocation, a putative Class member must have purchased shares of Mallinckrodt common stock during at least one of these three periods during the Class Period and held the purchased shares through the claim's respective corrective disclosure dates.

And the amounts of the "Recognized Loss Amounts" correspond to the alleged inflation in the Company's stock at the time of a Settlement Class member's purchases, as reflected with certain adjustments based on industry and market conditions, in the stock price drops at the times of the alleged curative disclosures and as described in the Notice.  Thus, the proposed Plan takes into account the stock drops that resulted from disclosures related to the three sets of claims in this Action, and provides for an allocation that divides the Net Settlement Fund dependent upon the purchase and sales prices (or prices following the disclosures) for each Class Member.  This treats all similarly situated Class Members equitably and should be preliminarily approved.

> **D.    The Court Should Appoint a Claims Administrator to Handle Notification and Claims Processing and Approve the Method and Content of the Proposed Notice**

The law provides that "[i]f the court preliminarily approves the settlement, it then must direct the preparation of notice informing class members of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing," *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. at 87.  Lead Plaintiff requests that the Court appoint a Claims Administrator, approve the form and content of the proposed Notice and Summary Notice, and approve the proposed Proof of Claim and Release form.  See Exhibits 2, 3 and 4 to the Proposed Order.

As outlined in the Proposed Preliminary Approval Order, Lead Plaintiff will notify Class Members of the Settlement by (a) mailing the Notice and Proof of Claim to all Class Members who can be identified with reasonable effort,[8] (b) posting the Notice, Proof of Claim and other

---

[8] Mallinckrodt has provided the proposed Claims Administrator, A.B. Data, Ltd. ("A.B. Data"), with shareholder lists reflecting record holders of the Company's stock during the Class Period. The proposed Claims Administrator will send the Notice and Proof of Claim form to those identified stock holders as well as approximately 5,000 banks, brokers, and nominees as part of the initial mailing.  It will also send an email blast to the top institutional investors, which provides the Notice, Proof of Claim form, and electronic filing instructions.  In addition, it will

Settlement documents on publicly identified websites, and (c) publishing a Summary Notice in the *Investor's Business Daily* and over *PR Newswire*.  The Notice will advise Class Members of (i) the pendency of the class action; (ii) the essential terms of this Settlement; (iii) the Plan of Allocation for distributing the Net Settlement Fund to members of the Settlement Class; and (iv) information regarding Lead Counsel's motion for attorneys' fees and reimbursement of litigation expenses.  The Notice advises that a Class Member may enter an appearance through counsel if desired, and notes that the Court will exclude from the Class any Class Member who requests exclusion through the procedures set forth and within the deadline set forth in the Notice for doing so.  The Notice further describes (1) the binding effect of a judgment on Class Members under Rule 23(c)(3), (2) how to object to the proposed Settlement, the Plan of Allocation and/or Lead Counsel's fee and expense reimbursement request, and (3) how to submit a Proof of Claim and Release.  The Notice will also provide specifics on the date, time and place of the Settlement Hearing.

The Parties believe that the form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7), which requires a certified class to receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The manner of providing notice, which includes individual notice by mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23.  *See In re Warner Chilcott Ltd. Sec. Litig*., 2008 WL 5110904, *1, 3 (S.D.N.Y. Nov. 20, 2008); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 448-49 (S.D.N.Y. 2004).

---

send an email that includes the Notice to the Depository Trust Company ("DTC"), a limited purpose trust company that acts as a clearinghouse to process and settle trades in corporate and municipal securities, to post to DTC's Legal Notice System ("LENS") system.

Lead Plaintiff and Lead Counsel also propose that the Court approve the retention of A.B. Data as Claims Administrator.  Proposed Order ¶ 7.  A.B. Data, which was selected through a competitive bidding process and has more than 40 years of experience in every aspect of class action notification and settlement administration, has been appointed by dozens of courts and processed billions of dollars of settlement proceeds (*see* https://abdataclassaction.com/).   If appointed, A.B. Data would have primary responsibility for notification and communications with potential Settlement Class members, processing claims, and processing objections and requests for exclusion from the proposed Settlement Class.

Lead Plaintiff has attached as Exhibit 2 to the Proposed Order the text of the Notice that the Parties propose to distribute to the Class by mail to all potential class members whose addresses are known to and provided by Defendants.  As part of that, the Parties request that the Court order that brokers and other nominees who purchased or acquired Mallinckrodt common stock during the Class Period for the benefit of another person or entity shall (a) within ten (10) calendar days of receipt of the Notice, request from the Claims Administrator sufficient copies of the Notice and Proof of Claim and Release to forward to all such beneficial owners and within ten (10) calendar days of receipt of those Notice and Proof of Claim and Release forward them to all such beneficial owners; or (b) within ten (10) calendar days of receipt of the Notice, send a list of the names and addresses of all such beneficial owners to the Claims Administrator in which event the Claims Administrator shall promptly mail the Notice and Proof of Claim and Release to such beneficial owners.  In accordance with standard notification practices, the Parties request that if a nominee complies with the order by following the procedure outlined above, such nominees may seek reimbursement of their reasonable expenses actually incurred in complying with the order by providing the Claims Administrator with proper documentation

supporting the expenses for which reimbursement is sought, and that such properly documented expenses incurred by nominees in compliance with the terms of the order may be paid from the Settlement Fund, with any disputes as to the reasonableness or documentation of expenses incurred subject to review by this Court.  *See* Proposed Order ¶ 9.

In addition, the Parties have prepared a proposed Summary Notice, attached as Exhibit 4 to the Proposed Order, that they suggest should be printed once in the national edition of the *Investor's Business Daily* and disseminated once on *P.R. Newswire*.  Proposed Order ¶ 8.[9]

---

[9]  Among the items included in the proposed Notice is a description of Lead Plaintiff's proposed Plan of Allocation and disclosures concerning the attorney's fee and expenses application that Lead Counsel anticipates filing.  Should this Court grant preliminary approval, Lead Plaintiff and Lead Counsel will be filing motions for final approval of the Settlement, for final approval of the proposed Plan of Allocation, and for an award of attorney's fees and reimbursement of expenses, including an award to the Lead Plaintiff.  As stated in the Notice, Lead Counsel anticipates seeking a fee of up to 20 percent of the Settlement Amount and up to $900,000 for reimbursement of litigation expenses, including an award, pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), to the Lead Plaintiff for the expenses that it incurred in the prosecution of this Action.

As will be further described in Lead Counsel's motion for attorney's fees and expenses, the Court of Appeals in this Circuit has established that courts should apply the percentage-of-fund methodology for determining fees in a "common fund" case like this one, and approved a 20 percent fee, noting that "[t]he twenty percent figure is well within the range of reasonable fees in common fund cases …. a review of similar cases reveals that a majority of common fund class action fee awards fall between twenty and thirty percent." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271-72 (D.C. Cir. 1993).  *See also Hubbard v. Donahoe,* 958 F. Supp. 2d 116, 121 (D.D.C. 2013) (following *Swedish Hosp.*, court awarded a fee of 20 percent of the recovery).  Other cases in this Circuit have approved greater percentage fee awards.  *See, e.g., In re Lorazepam & Clorazepate Antitrust Litig.,* 2003 WL 22037741, *8 (D.D.C. June 16, 2003) (awarding a 30 percent fee); *In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, *3 (D.D.C. Oct. 22, 1998) (awarding a 30 percent fee); *Howard v. Liquidity Services Inc.*, 2018 WL 4853898, *8 (D.D.C. Oct. 5, 2018) (awarding a 25 percent fee); *In re Fed. Nat'l Mortg. Ass'n Sec., Deriv., & "ERISA" Litig.*, 4 F. Supp. 3d at 113 (awarding a 22 percent fee).  The motion for attorney's fees and expenses will also include information concerning the hours, lodestars and expenses that Lead Plaintiff's Counsel and Local's 677's counsel incurred in the prosecution of this Action, including in the Mediation process, to assist the Court in evaluating the fee and expense application.

**E.     The Deadlines that the Parties Propose for and in Advance of the Final Approval Hearing**

The Proposed Preliminary Approval Order, if approved, will establish pertinent deadlines in connection with the proposed Settlement.  As drafted in the Proposed Order, most of the deadlines will be set based on certain numbers of days following entry of the Proposed Order or certain numbers of days prior to the Final Approval Hearing.  The Parties are requesting that the Court enter a date and time for the Final Approval Hearing in the Proposed Order, *see* Proposed Order ¶ 5, and ***respectfully suggest that the Court set the Final Approval Hearing for a date not earlier than 110 days from entry of the Proposed Order***.[10]  Once the Preliminary Approval Order is entered, as noted above and as further described below, the Settlement would proceed on the following schedule:

| | |
|---|---|
| 20 Business Days Later | Notice and Proof of Claim mailed by the Claims Administrator and posted on its and Lead Counsel's websites |
| 10 Days Later | Summary Notice posted in the *Investor's Business Daily* and on PR Newswire |
| 45 Days Before Hearing | Filing of motion for final approval of settlement and plan of allocation, and filing of fee and expense application |
| 30 Days Before Hearing | Deadlines for submission of objections and/or exclusion requests |
| 10 Days Before Hearing | Filing of reply briefs in further support of motion for final approval of settlement and plan of allocation, and fee and expense application |
| 7 Days Before Hearing | Filing of proof of mailing of Notice and Proof of Claim and Issuance of Summary Notice |
| Six Months After Mailing and Posting of the Notice | Deadline for submission of Proof of Claim forms |

Per the terms of the Stipulation, Defendants previously provided the Claims Administrator with records of purchasers and/or record holders of Mallinckrodt common stock during the Class Period.  Given that, the Proposed Order provides that not later than twenty (20)

---

[10] The Parties and their counsel could be available to attend the Final Approval Hearing on July 28, August 1-4 or August 9-11, 2022.

business days after entry of the Proposed Order (the "Notice Date"), the Claims Administrator shall cause a copy of the Notice and the Proof of Claim and Release to be mailed by first-class mail to Class Members at the addresses set forth in the records provided by Mallinckrodt, and to those who may otherwise be identified through reasonable effort.  *See* page 23, note 8, above and Proposed Order ¶ 7(b).  As also described above, the Proposed Order will require brokers and other nominees who purchased or acquired Mallinckrodt stock during the Class Period for the benefit of another person or entity to promptly request from the Claims Administrator sufficient copies of the Notice and Proof of Claim Form to forward to all such beneficial owners or to supply the Claims Administrator with a list of the names and addresses of all such beneficial owners so that the Claims Administrator shall promptly mail the Notice and Proof of Claim Form to such beneficial owners.  *See* Proposed Order ¶ 9.  Contemporaneously with the initial mailing, copies of the Notice and Proof of Claim and Release will also be posted on a webpage dedicated to the Settlement maintained by the Claims Administrator from which Class Members may download copies of the Notice and Proof of Claim Form (Proposed Order ¶ 7(c)).  Lead Counsel will also post pertinent case and Settlement documents on its website.

The Proposed Order further provides that no later than ten (10) calendar days after the Notice Date, the Claims Admintstrator shall cause a copy of the Summary Notice to be published once in the national edition of The *Investor's Business Daily*, and to be transmitted once over *PR Newswire* (Proposed Order ¶ 7(d)).

Lead Plaintiff and Lead Counsel anticipate filing a motion for final approval of the Settlement and the Plan of Allocation, along with a motion to be filed by Lead Counsel for an award of attorneys' fees and reimbursement of the expenses incurred in the prosecution of this Action at least 45 days before the Final Approval Hearing set by the Court.  The Proposed Order

provides that no later than 30 days before the Final Approval Hearing, Settlement Class members who wish to exclude themselves from the Settlement Class or object to the Settlement, Plan of Allocation and/or fee and expense application must do so in accordance with the Proposed Order's provisions governing those decisions. *See* Proposed Order ¶¶ 15, 19. Lead Plaintiff, Lead Counsel and potentially Defendants will thereafter submit, at least 10 days before the Final Approval Hearing, any replies they wish to file in further support of the Settlement, Plan of Allocation and/or the fee and expense application. Not later than seven (7) calendar days prior to the Final Approval Hearing, Lead Counsel shall also file with the Court proof, by affidavit or declaration, of the mailing and publication of the Notice, Summary Notice and Proof of Claim and Release. *See* Proposed Order ¶ 7(e).

Finally, the Proposed Order provides that Settlement Class members who wish to participate in the distribution of the Net Settlement Fund, assuming the Court approves the Settlement, must submit their Proof of Claim and Release forms within six months of the Notice Date. *See* Proposed Order ¶ 11.

### F.     Lead Counsel Should Be Appointed Class Counsel

Fed. R. Civ. P. requires a court to appoint class counsel when certifying a class action. As detailed above, and as the Court is aware, Lead Counsel already performed substantial work in investigating and prosecuting claims in this Action, are experienced in handling complex litigation, especially of the type asserted in this Action, and have extensive knowledge of the applicable securities laws. *See generally* https://www.barrack.com/. After the appointment of STRS Ohio as Lead Plaintiff and the Court's approval of STRS Ohio's chosen counsel, the undersigned Lead Counsel investigated and filed the Complaint on May 18, 2018, providing sufficient allegations to support the claims upheld by this Court in its Memorandum Opinion and

Order of July 30, 2019 – including claims based on statements made by Defendants during 2017 that had not previously been alleged in this Action. The Firm engaged in extensive meet and confer sessions with Defendants' counsel in negotiating and arriving at an ESI Protocol, Confidentiality Order, and highly specific production and search parameters for the Parties' productions of documents; produced and reviewed over 250,000 pages of documents in the litigation of the case; retained a market efficiency expert and filed a comprehensive motion for class certification on July 30, 2020; and led the settlement negotiations that produced a substantial proposed settlement, especially considering Mallinckrodt's bankruptcy

These facts all support appointing Barrack, Rodos & Bacine as Class Counsel pursuant to Fed. R. Civ. P. 23(e). *See In re Pfizer Secs. Litig.*, 282 F.R.D. 38, 47 (S.D.N.Y. 2012) (appointing class counsel that had "devoted considerable resources to this case since it was first filed, and has effectively protected the interests of Plaintiffs and the putative class").

## V.   CONCLUSION

For the foregoing reasons, the Parties in this Action respectfully submit that the Court should lift the stay of proceedings presently in place and grant preliminary approval of the proposed Settlement, thereby authorizing dissemination of the proposed Notice and Summary Notice, and establish deadlines for Proof of Claim and Release submissions, for Objections and Requests for Exclusion from the Settlement Class, and in connection with Lead Plaintiff's anticipated motions for final approval of the Settlement and proposed Plan of Allocation, and Lead Counsel's anticipation motion for an award of attorney's fees and reimbursement of expenses incurred in the prosecution of the Action.

Dated:  March 22, 2022                          Respectfully submitted,

                                                **BARRACK, RODOS & BACINE**

                                                By:   */s/ Jeffrey W. Golan*
                                                Leonard Barrack
                                                Mark R. Rosen (Bar No. 336065)
                                                Jeffrey W. Golan (pro hac vice)
                                                Jeffrey B. Gittleman (pro hac vice)
                                                3300 Two Commerce Square
                                                2001 Market Street
                                                Philadelphia, PA 19103
                                                Telephone: (215) 963-0600
                                                Fax: (215) 963-0838

                                                *Attorneys for Lead Plaintiff, State*
                                                *Teachers Retirement System of Ohio and*
                                                *Lead Counsel for the Class*

                                                **MURRAY MURPHY MOUL + BASIL
                                                LLP**
                                                Brian K. Murphy (pro hac vice)
                                                Joseph F. Murray
                                                Geoffrey J. Moul
                                                1114 Dublin Rd.
                                                Columbus, OH 43215
                                                Telephone: (614) 488-0400
                                                Facsimile: (614) 488-0401
                                                murphy@mmmb.com
                                                murray@mmmb.com
                                                moul@mmmb.com

                                                *Special Counsel for State Teachers*
                                                *Retirement System of Ohio*